1997–NMSC–012

931 P.2d 1390

**In the Matter of Josephine D. ROHR, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

No. 23771.

Supreme Court of New Mexico.

Feb. 4, 1997.

Sally E. Scott, Deputy Chief Disciplinary Counsel, Albuquerque.

Josephine D. Rohr, Albuquerque.

**OPINION**

PER CURIAM.

This matter came before the Court on the recommendation of the disciplinary board that Josephine D. Rohr be disbarred from the practice of law in the State of New Mexico. The Court concurs with the recommendation. Disbarment is the appropriate sanction for Rohr's violations of the Rules of Professional Conduct, 16–101 to 16–805 NMRA.

In the summer of 1995, Rohr represented Jesus Murillo in a worker's compensation case. Rohr negotiated a settlement for Murillo, which was approved by the workers' compensation court on July 11, 1995. On or about July 17, 1995, Rohr received three drafts from the employer's insurer. One draft, in the amount of $37,500, was a lump sum payment in lieu of future weekly compensation. A second draft, in the sum of $4,000, was for future medical expenses. The third draft, in the amount of $12,500, was payment of that portion of Rohr's attorney's fees which the employer was ordered to pay.

All three drafts were made payable to both Murillo and Rohr. With the verbal permission of her client, Rohr endorsed all three checks on behalf of herself and Murillo. The check for attorney's fees was properly deposited into Rohr's business account. The checks for future medical expenses and the lump sum payment, totalling $41,500, were deposited in Rohr's trust account. By the terms of the order approving settlement, Murillo was responsible for paying Rohr attorney's fees of $4,167. The remainder of the money deposited by Rohr into her trust account, $37,333, belonged to Murillo.

Between July 18, 1995 and August 31, 1995, Rohr converted to her own use the entire $37,333 she was holding in trust for Murillo. For more than three months, Rohr lied to Murillo about the availability of the settlement proceeds. During that time, she paid him a total of $1,900, telling him the payments were advances on his worker's compensation settlement. On October 3, 1996, Rohr tendered a trust account check to Murillo in the amount of $35,583. She knew at the time she issued this check that it would be returned for insufficient funds. On or about November 14, 1995, Rohr tendered

a cashier's check to Murillo in the sum of $4,000, bringing the total amount of her payments to him at that time to $5,900.

On November 17, 1995, Rohr orally reported her misconduct to disciplinary counsel. On November 27, 1995, at the request of disciplinary counsel, Rohr submitted a letter reporting her misconduct. At about the same time, two other complaints were received in the office of disciplinary counsel concerning Rohr's conversion of the funds she had received in trust for Murillo.

On November 22, 1995, Rohr met with Murillo and told him she had converted his money. She also executed a promissory note to Murillo, promising to pay him the sum of $31,600, with interest of twenty percent (20%) per annum from July 17, 1995. The note provided that it would be repaid at the rate of $5,000 per month beginning December 20, 1995. As of April 18, 1996, the date of the formal disciplinary hearing, Rohr had only made one payment. According to Rohr's testimony at the disciplinary hearing, that $5,000 payment was funded by a loan from a family member. Rohr has paid Murillo a total of $10,900, leaving a balance still owing to Murillo from his settlement of $26,-433 plus interest.

In imposing discipline, the Court may consider factors in aggravation and mitigation, if present in the record. Several of the factors recognized by the ABA *Standards for Imposing Lawyer Sanctions,* § 9.22 and § 9.32, are present in this case. Rohr's conversion of her client's funds evidenced a selfish and dishonest motive. Her conversion of Murillo's funds took place over a six-week period of time, and she lied to her client about the settlement for several months. Her misconduct was not a one-time impulsive act; rather, Rohr engaged in a pattern of misconduct. Murillo, a citizen of Mexico who speaks very little English and has no more than a sixth-grade education, was especially vulnerable to Rohr's misconduct. Rohr told disciplinary counsel and the hearing committee that when she took the money, she thought she would be able to promptly repay it with a settle-ment she was expecting in another case. That case was not even filed until August 7, 1995, and correspondence from the adjuster for the defendant's insurance company indicated that the suit papers were his first notice of suit. Rohr did not have a good faith basis for telling disciplinary counsel and the hearing committee that she expected the case to settle. Submission of false statements during the disciplinary process is an aggravating factor. Finally, Rohr has been licensed to practice law for more than thirteen years in New Mexico. Substantial experience in the practice of law is also an aggravating factor. While dishonest acts will not be tolerated by any lawyer, they are particularly disappointing when committed by more senior members of the bar; those members should be the mentors and role models for less experienced members of the bar. Rohr's conduct was anything but a model of ethical behavior.

In mitigation of her misconduct, Rohr told the hearing committee that she used Murillo's money to pay for medical treatment for her ailing father, to travel to the Dominican Republic to see her father whom she had not seen in more than twenty years, and, after his death, to pay funeral expenses and give money to his family. It was undisputed that Rohr self-reported her misconduct and cooperated with disciplinary counsel. As noted above, Rohr made partial voluntary restitution to Murillo. She has shown remorse for her misconduct.

All these factors—experiencing personal problems, making full disclosure to disciplinary authorities, cooperating in the disciplinary process, making a good faith effort at restitution, and showing sincere remorse—are recognized in mitigation by the ABA *Standards for Imposing Lawyer Sanctions,* § 9.32. These mitigating factors have been considered by the Court. They cannot, however, prevent disbarment of a lawyer who has stolen her client's money. *In re Kelly,* 119 N.M. 807, 896 P.2d. 487 (1995).

NOW, THEREFORE, IT IS ORDERED that Josephine D. Rohr hereby is DISBARRED from the practice of law; and

IT IS FURTHER ORDERED that the following conditions shall be satisfied prior to the filing of any application for reinstatement:

(1) Respondent shall pay full restitution to Jesus A. Murillo in the sum of $26,433, plus interest on all unpaid sums from July 17, 1995, at the rate of fifteen percent (15%) per annum;

(2) Respondent shall take and successfully complete the Multistate Professional Responsibility Examination;

(3) Respondent shall pay the costs of the disciplinary proceeding in the amount of $459.33 on or before October 4, 1996, and any unpaid balance shall accrue interest at a rate of fifteen percent (15%) per annum; and

(4) Respondent shall submit the statement of a licensed psychiatrist or psychologist selected by disciplinary counsel that she is psychologically capable of resuming the practice of law, with respondent to pay the cost of the examination or evaluation required to provide such a statement.

IT IS SO ORDERED.

SERNA, J., not participating.