1999-NMSC-003

973 P.2d 243

In the Matter of Frank J. LALLY, Esq., An Attorney Admitted to Practice Before the Courts of the State of New Mexico.

No. 25463.

Supreme Court of New Mexico.

Jan. 20, 1999.

Sally Scott–Mullins, Deputy Chief Disciplinary Counsel, Albuquerque.

Frank J. Lally, Hartsville, South Carolina.

## OPINION

PER CURIAM.

{1}  This matter came before the Court upon recommendation of the disciplinary board to indefinitely suspend Frank J. Lally for multiple violations of the Rules of Professional Conduct, Rules 16–101 through 16–804 NMRA. For the reasons set forth below, we approve the recommended sanction and order that respondent be indefinitely suspended from the practice of law.

{2}  In January 1990, Alfred Randolph was involved in a vehicular accident, and, in Spring 1990, asked respondent to represent him in recovering his damages from the accident. On November 12, 1991, respondent filed a complaint to recover damages for personal injury and property damage against the other driver. Respondent failed to provide his client with a copy of the complaint or any other pleading filed in the case. After summons was issued and the defendant's answer was filed, the defendant served interrogatories on respondent; however, respondent failed to obtain information needed to answer and made no response to the interrogatories. Despite the filing of a motion to compel answers to interrogatories, respondent neither responded to the motion nor answered the motion to dismiss, which was subsequently filed. An order to dismiss was entered January 26, 1994, dismissing the case with prejudice. The court file reflects that respondent's only action in the suit was the filing of the complaint and causing a summons to be issued.

{3}  At the beginning of the representation, respondent told his client that it would be best to wait "a couple of years" to see how well he recovered from his injuries. Because of this, from Spring 1990 until Summer 1993, the client contacted respondent on only a few occasions. He was assured each time that everything was fine and he should continue to be patient.

{4}  In July 1993, the client retired from his employment, and, thereafter, inquired more frequently about the status of his case, telling respondent he wanted to pursue his case more vigorously. Respondent advised his client for the first time that suit had been filed in November 1991, but failed to disclose that the case had been dismissed. Respondent told his client to expect further delay because only one district judge sat in McKinley County and the judge was hearing only criminal, not civil, cases. From 1993 to Spring 1996, the client contacted respondent every few months to inquire about the status of his lawsuit. Respondent repeatedly assured his client that the case would be heard.

{5} In Spring 1996, as the client's requests for information and action on his case became more frequent and insistent, respondent began an overt pattern of deception intended to convince his client that the case was being pursued. Respondent gave his client a set of instructions for deponents and told him he would have to answer questions for the insurance company's lawyer. On one occasion, the client went to respondent's office expecting to be deposed. No one appeared for the deposition (because the case had been dismissed with prejudice more than two years previously), however, respondent told his client that the deposition would have to be rescheduled. On another occasion, respondent called his client the night before his deposition was supposedly rescheduled and told him that the defense lawyers had canceled the deposition. Respondent also told his client several times in late 1996 and early 1997 that court hearings were scheduled in his case, and, on each occasion, respondent would then tell his client that the hearing had been canceled.

{6} In the second half of 1996, the client began pressing respondent for a copy of his file. Respondent stalled and then told his client that a settlement was being negotiated with the insurance company. Respondent subsequently told his client that a check was received, but that one of his former law partners refused to endorse the check for payment. Respondent stated there would be further delay while he returned the check to the insurance company to be re-issued without the former partner's name on it.

{7} Shortly thereafter, the client called the defendant's insurance company to inquire when the new check would be issued. He was told that the case had been dismissed and could not be reopened. In Spring 1997, the client went to the court clerk's office in McKinley County and was advised that his case had been dismissed with prejudice in 1994. The client confronted respondent with this information and respondent told him it was a mistake and that he would straighten it out. Shortly thereafter, respondent called the client and told him the matter had been settled out of court with the defense lawyers. Respondent said the insurance company would settle for $100,000.00 if the client would agree to be paid $5,000.00 per month for 20 months.

{8} On May 9, 1997, respondent instructed his client to come to his office to pick up the initial $5,000.00 payment. The client openly recorded his meeting with respondent, placing a tape recorder on respondent's desk when their conversation began. Nonetheless, during this meeting, respondent made additional misrepresentations by telling his client that the check was written on his trust account because when "attorneys handle money that belongs to somebody else, to go to the client it has to go through the trust account." Respondent also told his client that future payments would come directly from the insurance company. Although respondent showed his client a document entitled "Settlement and Release Re: A. Randolph vs. D. Wood," the document failed to identify who was paying the money or who would be released. Respondent told his client that the original of this document would be sent to "them" for execution and he would then receive a copy. Respondent agreed with the client, or did not correct him, when his client stated that he understood that respondent would be receiving $1,000 per month for 20 months as his attorney's fee. These misrepresentations continued respondent's deception, designed to conceal his failure to properly handle his client's case.

{9} Although promised, respondent failed to provide any documentation to his client. The settlement and release was never returned to the client for signature and no other payments were made to the client. It is a matter of professional, if not personal, dishonor, for a lawyer to do nothing but make a client's situation worse. Respondent not only abandoned his client's claim but also did so in such a way that the claim was dismissed with prejudice. As egregious as his failings were in allowing the claim to be dismissed with prejudice, respondent's subsequent resort to deceit to cover his misconduct was worse.

{10} Respondent's conduct violated several provisions of the Rules of Professional Conduct: Rule 16–101, by failing to provide competent representation; Rule 16–103, by

failing to act with reasonable diligence and promptness in representing a client; Rule 16–104, by failing to keep his client reasonably informed about the status of a matter and failing to respond to reasonable requests for information; Rule 16–116(D), by failing to surrender papers and property to which the client was entitled at the termination of the representation; Rule 16–302, by failing to make reasonable efforts to expedite litigation consistent with the interests of his client; Rule 16–804(C), by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; Rule 16–804(D), by engaging in conduct that is prejudicial to the administration of justice; and Rule 16–804(H), by engaging in conduct that adversely reflects on his fitness to practice law.

{11} This misconduct, in and of itself, is sufficient to justify the recommended discipline of an indefinite suspension. In addition, however, respondent failed to cooperate during the disciplinary investigation. Disciplinary counsel's initial request for additional information required two letters to respondent to obtain an answer. A subsequent request for additional information was sent by certified mail, return receipt requested, to respondent's Gallup, New Mexico address. This was respondent's address of record at the beginning of the investigation of this complaint, and the address that appeared on respondent's letters to disciplinary counsel. Although the return receipt showed the letter was received, a reply from respondent was never received by disciplinary counsel. A second request also failed to elicit a response. Disciplinary counsel then learned that respondent had changed his address of record with the Supreme Court to a South Carolina post office box, while still using the Gallup address in correspondence concerning the complaint. Disciplinary counsel wrote to respondent at the South Carolina address, enclosing copies of the earlier requests for information. Nonetheless, no response was received from respondent until March 22, 1998, after formal charges were filed. Subsequently, respondent contended that he had not received mail at his South Carolina post office box because he was not in that state.

{12} In a footnote to *In re Deutsch,* 113 N.M. 711, 832 P.2d 402 (1992), we noted respondent's complaint that he did not receive correspondence and notices sent to his address of record because he was out of state. We stated as follows concerning an attorney's duty to provide a current address of record:

> All New Mexico attorneys have an obligation to apprise this Court and the State Bar of an official *address of record at which the attorney will regularly receive mail.* This is certainly no less true of attorneys involved in disciplinary proceedings. This Court previously has indicated that due process requirements are satisfied in disciplinary proceedings by providing notice by mail to a respondent-attorney at his address of record.

*Id.* at 714, n. 1, 832 P.2d at 405, n. 1 (emphasis added). By failing to advise disciplinary counsel of his change in address, and by failing to provide an address at which he would regularly receive mail, respondent failed to cooperate in the disciplinary process. To hold otherwise would encourage attorneys to "disappear at any critical juncture of a disciplinary proceeding, whenever it appeared imminent that the attorney would receive some type of discipline." *In re Steere,* 112 N.M. 205, 207, 813 P.2d 482, 484 (1991).

{13} Respondent's conduct during the investigation of this complaint violated Rule 16–801(B), failing to respond to a lawful demand for information from disciplinary authority; Rule 16–803(D), failing to give full cooperation and assistance to disciplinary counsel; and Rule 16–804(H), engaging in conduct that adversely reflects on his fitness to practice law.

{14} In addition to the findings of misconduct set forth above, the hearing committee and disciplinary board found that a number of aggravating factors were present. They found that respondent had engaged in bad faith obstruction of the disciplinary process by intentionally failing to comply with the Rules Governing Discipline, Rules 17–101 to –316 NMRA, in that respondent submitted false statements and engaged in deceptive practices during the disciplinary process; respondent engaged in misconduct involving dishonesty and evidencing a selfish motive; respondent refused to acknowledge the wrongful nature of his conduct; respondent

committed disciplinary violations against a vulnerable client; respondent had substantial experience in the practice of law, having been licensed in New Mexico since 1978; and, that respondent exhibited indifference to making restitution. All of these are recognized as aggravating factors by the *ABA Standards for Imposing Law Sanctions* and are appropriate for consideration in the imposition of sanctions for violations of the New Mexico Rules of Professional Conduct.

{15} Accordingly, we determine that the recommended discipline of indefinite suspension is the minimum penalty appropriate in this case. Not only did respondent "disappear" during the investigation, but he was only intermittently present during the formal disciplinary proceeding. After belatedly answering the charges, respondent did nothing further, including not appearing at the hearing on the merits. For the protection of the profession and the public, respondent must be required to satisfy the reinstatement procedures and criteria, set forth in Rule 17–214, as well as the conditions of the order of discipline entered in this case.

{16} NOW, THEREFORE, IT IS ORDERED that Frank J. Lally hereby is indefinitely suspended from the practice of law in the State of New Mexico pursuant to Rule 17–206(A)(3) NMRA;

{17} IT IS FURTHER ORDERED that as a condition of reinstatement, respondent shall demonstrate proof of his fitness to resume the practice of law, including providing reports of psychological and physical examinations;

{18} IT IS FURTHER ORDERED that respondent shall pay the costs incurred in this disciplinary action in the amount of $653.09 on or before January 29, 1999, with interest accruing at the rate of fifteen percent (15%) on any amount unpaid as of January 29, 1999; and

{19} IT IS FURTHER ORDERED that said costs shall be reduced to a transcript of judgment.

{20} IT IS SO ORDERED.