1999-NMSC-032

985 P.2d 752

**In the Matter of Glen L. HOUSTON, Esq.
An Attorney Licensed to Practice Before
the Courts of the State of New Mexico**

**No. 25,830.**

Supreme Court of New Mexico.

Aug. 12, 1999.

Sally Scott–Mullins, Deputy Chief Disciplinary Counsel, Albuquerque, for Disciplinary Board.

Glen L. Houston, Hobbs.

## OPINION

PER CURIAM.

{1}   This matter came before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, Rules 17–101 through 17–316 NMRA, in which Glen L. Houston was found to have committed multiple violations of the Rules of Professional Conduct, Rules 16–101 through 16–805 NMRA, in his representation of clients in two separate matters. We adopt the recommendation of the disciplinary board that Glen L. Houston be suspended for a period of eighteen months, with the entire period of suspension deferred in favor of supervised probation.

{2}   The first matter involved respondent's representation of conflicting interests in related divorce, domestic violence, and criminal proceedings. In May 1997, the wife retained respondent to represent her in a divorce proceeding, which appeared to be uncontested. Although wife believed respondent was representing her in the divorce, respondent testified before the hearing committee that he was representing the interests of both husband and wife. The interests of husband and wife in the divorce were adverse, even though the divorce was a consent proceeding.

{3}   On or about July 17, 1997, wife informed respondent that her seven-year old daughter had reported being sexually molested by her father. Wife also told respondent that husband had battered her on two sepa-

rate occasions. The batteries were severe, and included the husband kicking her in the ribs, banging her head against a wall, and pointing a loaded pistol at her. All four children witnessed their father's battery on their mother.

{4}   Relying on respondent's advice, wife filed a domestic violence petition and informed the interviewer of the sexual molestation. Husband was arrested and charged with criminal sexual penetration of a minor, as well as battery and domestic violence. At the request of husband, and with the consent of wife, respondent agreed to represent the husband in the criminal case, and also provided advice to him concerning the domestic violence charges.

{5}   A hearing was scheduled for July 25, 1997, on the domestic violence petition. Respondent failed to attend because of a scheduling conflict, but advised husband to admit at the hearing that domestic violence had occurred and to turn himself in for booking on the criminal charges after the domestic violence hearing. At the domestic violence hearing, husband told the judge he had hit wife. The judge immediately advised husband not to say anything else, warning him that anything he said could be used against him if criminal battery charges were pursued.

{6}   In requesting that wife consent to his representing husband on the criminal charges, respondent failed to tell her that both she and her daughter could be called to testify on the criminal charges and further failed to discuss with her any other risks of the common representation. Rule 16–107(A) NMRA requires a lawyer seeking a client's consent to the lawyer's representation of a party with adverse interests to explain both the advantages and risks of the common representation.

{7}   Respondent represented husband in accepting a plea bargain that allowed him to plead guilty to criminal sexual contact. At the guilty plea hearing, the court inquired on the record, while wife was present, as to whether husband's waiver of the conflict was knowing. The court approved the waiver and proceeded with the guilty plea proceed-

ing. Husband was sentenced to a three-year prison sentence for criminal sexual contact with a minor.

{8} The divorce decree had not been entered when the battery and criminal sexual penetration charges were filed. Although fully aware of the facts, respondent failed to consult with wife about making changes in the divorce decree, and did not seek to have restrictions placed on the husband's custody status or visitation. The decree prepared and filed by respondent provided for husband to have joint legal custody of the children and unsupervised visitation.[1]

{9} Before the decree was entered, wife informed respondent that she did not want husband to have unsupervised visitation with the children. Respondent told her that the visitation provided in the decree was standard in New Mexico and that she could go back to court after husband was released from prison if she wanted to change the visitation. Returning to court to attempt to change the visitation provisions would require wife to bear the burden of showing changed circumstances rather than requiring husband to bear that burden in order to retain any visitation. Respondent clearly protected husband's interests to the disadvantage of his client, the wife, by entering a decree containing joint custody and unsupervised visitation provisions, knowing husband had beaten wife and sexually abused his daughter.

{10} After entry of the divorce decree, respondent was remiss in not advising wife that failure to permit husband to have unsupervised visitation in accordance with the decree could subject her to criminal charges of custodial interference. On one occasion before husband's incarceration, his mother contacted wife about taking the children to visit at husband's apartment. When wife refused, husband contacted the police and provided them with a copy of the visitation schedule included in the decree. A police officer contacted wife and told her she could be arrested if she did not permit visitation in accordance with the court order. Even after she told the officer about husband's sexual abuse of his daughter and the pending criminal proceeding, the officer said that she must comply with the existing order of the court on visitation. She permitted her three sons to visit with husband, but did not permit her daughter to go. Husband did not insist that his daughter visit him at that time.

{11} The fact that respondent's representation of wife was materially limited by his representation of husband is reflected not only in the custody and visitation provisions of the decree, but also in his failure to provide tax benefits to wife for supporting the children during husband's incarceration. Although respondent was aware that wife would be the sole support of her children while husband was incarcerated, the divorce decree prepared by respondent awarded the dependent tax deductions for all four children to husband, with no alternative provision for the period of his incarceration.

{12} Respondent's conduct in these matters violated Rules 16–107(A) and 16–107(B). Rule 16–107(A) prohibits a lawyer from representing a client with interests adverse to those of another client unless two criteria are met. The first criterion is that the lawyer must reasonably believe the representation will not adversely affect the lawyer's relationship with the other client. Only if the first criterion is met is the second criterion—client consent—a factor. Whether the lawyer reasonably could believe the representation would not be affected is determined by an objective standard. The "Terminology" section of the Preamble to our Rules of Professional Conduct defines "reasonable", in the context of a lawyer's conduct, to mean the conduct of a reasonably prudent

---

1. Also of concern is the fact that respondent testified that he did not believe husband's act of forcing his seven-year old daughter to commit fellatio was rape, or that it was as serious a crime as rape. While this display of insensitivity may not be a violation of the Rules of Professional Conduct, it does raise concerns about respondent's competence as a lawyer. Statutorily, abuse of a child, which by definition includes sexual abuse, is grounds for termination of parental rights. NMSA 1978, 32A–4–2B; 32A–4–28B. Awareness of these statutory provisions should have alerted respondent to the seriousness of the situation and the need to provide protection for the children in the divorce decree.

and competent lawyer. It was not reasonable for respondent to believe that he could represent both husband and wife in any of these proceedings without adversely affecting his relationship with each of these clients. The conflicts could not be waived by the consent of the clients in these circumstances.

▪ {13} The second matter at issue involved respondent's representation of clients seeking damages from the seller of a used van. After purchasing the van, the clients found that it had serious mechanical problems. Seller refused to repair the van.

{14} Respondent's firm filed suit on October 3, 1995. On June 2, 1997, a notice of bankruptcy was filed in the suit on behalf of the defendant car dealer. The only activities shown on the district court docket between the time the suit was filed in October 1995 and the filing of the bankruptcy notice in June 1997 were the vacation of a non-jury trial in August 1996, a new trial setting for December 5, 1996, and a stipulated vacation of the December 5, 1996 trial setting.

{15} These clients were not informed of the bankruptcy by respondent or anyone at his office. They learned of the bankruptcy from someone else and informed respondent's legal assistant, who told them that the bankruptcy would not affect their case. Respondent never consulted with his clients to determine if they wanted to file an objection to discharge in the bankruptcy proceeding, nor were they informed that their claim could be lost if a discharge was entered in bankruptcy without an objection to discharge being granted for their claim.

{16} After the bankruptcy was closed in September 1997, the district court set a scheduling conference for March 19, 1998. On March 26, 1998, defense counsel filed a motion to dismiss, attaching a copy of the discharge in bankruptcy. The district court case was dismissed as barred by the discharge in bankruptcy. At no time from February 1995, when respondent's firm was retained to represent these clients, until just prior to the June 9, 1998, hearing on the motion to dismiss, did respondent speak to or meet with his clients. Only his legal assistant or another staff member spoke with them.

▪ {17} The utilization of legal assistants is firmly established in our legal system. It is a practice that can provide cost savings to clients by allowing certain tasks to be performed by non-lawyers that otherwise would be performed by the lawyer. A lawyer cannot, however, abdicate all responsibilities to legal assistants. The lawyer has the primary responsibility for interacting with clients. In this instance, respondent had the responsibility to consult with the clients, both at the beginning of the representation and when significant events, such as the bankruptcy filing, occurred. Having a legal assistant conduct all meetings with the clients, during which the clients' objectives and the means for pursuing them are discussed and decided, raises serious questions about whether respondent aided in the unauthorized practice of law in violation of Rule 16–505(B). Although this particular conduct was not included among the charges in this disciplinary proceeding, respondent's failure to discharge his duty to provide the advice and expertise of a lawyer to his clients in determining the objectives of representation was among the charges filed against him. By failing to consult with his clients concerning the objectives of the representation and the means by which the objectives were to be pursued, respondent violated Rule 16–102(A).

{18} The hearing committee and board panel also found, and we agree, that respondent violated Rule 16–104(A) by failing to keep his clients reasonably informed about the status of their claim and by failing to ensure they received prompt replies to their reasonable requests for information. Telephone calls and correspondence from clients seeking information on the status of their case were not promptly answered; often there was no response at all. Respondent also violated Rule 16–104(B) by failing to provide sufficient information to the clients to permit them to make informed decisions regarding the representation. Respondent's conduct in this regard again exemplifies abdication of his responsibility to consult with clients concerning their case.

▪ {19} The hearing committee and board panel found no factors in mitigation of

respondent's conduct. They found one factor in aggravation—that respondent received an informal admonition in 1996 for violating Rule 16–107(A) (conflict of interest). The existence of a prior disciplinary record, especially for offenses of the same nature, is a recognized aggravating factor. ABA *Standards for Imposing Lawyer Sanctions,* § 9.22(a) (1991). We have noted on numerous occasions that "[r]epeated instances of the same conduct for which a lawyer previously has been disciplined generally will result in more severe discipline." *In re Schmidt,* 118 N.M. 213, 215, 880 P.2d 310, 312 (1994).

{20} NOW, THEREFORE, IT IS ORDERED that Glen L. Houston hereby is suspended from the practice of law for a period of eighteen (18) months pursuant to Rule 17–206(A)(2) NMRA.

{21} IT IS FURTHER ORDERED that the entire period of suspension shall be deferred and respondent shall be placed on supervised probation with the following terms and conditions:

(1) Respondent shall be supervised by a licensed New Mexico attorney selected by the disciplinary board or selected by mutual agreement of disciplinary counsel and respondent;

(2) Respondent shall reimburse his supervising attorney, at such hourly rate as shall be agreed upon by respondent and the supervising attorney, on a monthly basis for all time spent by the supervisor in discharging his or her duties;

(3) Respondent shall meet with his supervisor on such regular basis as directed by the supervisor and, in any event, no less than once per month;

(4) Respondent shall abide by his supervisor's directives for providing competent representation of his clients and in determining which, if any, representations must be declined because of conflicts of interest;

(5) Respondent shall confer with his supervisor at least one time each month about the volume of his caseload and shall abide by the supervisor's determination of whether he may accept new cases and, if so, the number of new cases he may accept, which determination shall be based upon a showing by respondent that he has the time and expertise needed to handle his caseload competently and with reasonable diligence, including, but not limited to, having sufficient time to communicate adequately with clients and opposing counsel, conducting research, filing appropriate pleadings, and conducting or responding to discovery;

(6) Respondent shall accept instruction from his supervisor in the areas of law office management, caseload management, and the development of a system for prompt communication with clients and opposing counsel, and shall demonstrate his understanding of these matters to the satisfaction of his supervisor;

(7) Respondent shall accept instruction from his supervisor on the proper division of duties between lawyers and legal assistants and the ethical limits of the functions of a legal assistant;

(8) Respondent shall personally consult with all new clients within a reasonable time after the commencement of the representation, and such consultation shall be concluded with an exploration of the client's objectives and a discussion of the means to be used to accomplish those objectives, and respondent shall document that such consultation has taken place;

(9) Respondent's failure to follow all reasonable directions of his probation supervisor in a prompt and satisfactory manner may result in disciplinary counsel filing a verified motion to show cause pursuant to Rule 17–206(G) NMRA, seeking revocation of the deferred status of the suspension;

(10) Should any complaints alleging incompetence, lack of diligence, or failure to communicate occurring after this date be found by disciplinary counsel to have sufficient merit to justify filing formal charges, additional formal charges shall be filed and a verified motion to show cause may be filed pursuant to Rule 17–206(G) NMRA to seek revocation of the deferred status of the suspension;

(11) Respondent shall promptly and timely respond to any and all complaints filed with the disciplinary board and to any

requests from disciplinary counsel for additional information relating to such complaints;

(12) Respondent shall observe all Rules of Professional Conduct and Rules Governing Discipline during his probationary period;

(13) Respondent shall take and pass the Multistate Professional Responsibility Examination during the period of probation; and

(14) Respondent shall enroll in and successfully complete fifteen 50–minute CLE hours in ethics and/or in law practice management during the period of probation.

{22}   IT IS FURTHER ORDERED that, as a condition of reinstatement to the active practice of law, respondent shall pay the costs incurred in this matter in the amount of $5,617.25 on or before October 21, 1999, and any balance remaining thereafter shall accrue interest at a rate of 15 percent (15%) per annum.

{23}   IT IS FURTHER ORDERED that said costs shall be reduced to a transcript of judgment.

{24}   IT IS SO ORDERED.

