1 P.3d 417

2000-NMSC-015

**In the Matter of Santiago R. CHAVEZ An Attorney Disbarred from Practice Before the Courts of the State of New Mexico**

No. 23,890.

Supreme Court of New Mexico.

May 10, 2000.

Santiago R. Chavez, Pro Se, Taos.

**OPINION**

PER CURIAM.

{1}  This matter came before the Court upon the recommendations of the disciplinary board in two separate proceedings conducted pursuant to the Rules Governing Discipline, Rules 17–101 through 17–316 NMRA 2000. Following a full evidentiary hearing held in disciplinary cause numbered 01–99–366, Santiago R. Chavez (respondent) was found to have committed multiple violations of the Rules of Professional Conduct, Rules 16–101 through 16–805 NMRA 2000, while indefinitely suspended from the practice of law. We adopt the recommendations of the disciplinary board in disciplinary cause numbered 01–99–366 and order that Santiago R. Chavez be disbarred.

{2}  In the second proceeding, respondent entered into a conditional agreement not to contest and consent to discipline in disciplinary cause numbered 11–99–381. Under that agreement, respondent declared his intention not to contest allegations that he committed further violations of the Rules of Professional Conduct before and during his period of suspension. We also adopt the disciplinary board's recommendations in disciplinary cause numbered 11–99–381 and approve the conditional agreement not to contest and consent to discipline. We impose additional discipline pursuant to that agreement, including an award of discovery sanctions and restrictions on respondent's employment as a law clerk, a paralegal, or in any other position of a quasi-legal nature.

I.

{3}  Respondent was indefinitely suspended from the practice of law by this Court on October 2, 1996. *See In re Chavez,* 1996–NMSC–059, 122 N.M. 504, 927 P.2d 1042. A specification of charges alleging two new counts of professional misconduct was filed against respondent in disciplinary cause numbered 01–99–366 on January 27, 1999. Another specification of charges alleging an additional six counts of professional misconduct was filed against Respondent in disci-

Arne Leonard, Deputy Disciplinary Counsel, Albuquerque.

plinary cause numbered 11–99–381 on November 16, 1999. Although tried separately below, we consolidate our discussion of the causes for purposes of this opinion.

## A.

{4} After respondent's license was suspended in October 1996, his sister moved to Taos at respondent's request to work with respondent at the Chavez Law Firm. Respondent's sister, who was a licensed New Mexico attorney at that time, was to serve as the sole attorney for the firm and respondent was to serve as her legal assistant. This relationship proved unworkable. Respondent's sister subsequently left the firm and was granted inactive status on March 3, 1997.

{5} When respondent's sister joined the Chavez Law Firm, the firm was representing two individuals who were buyers in a real estate transaction. To complete this transaction, the buyers each paid $18,000.00 to cover the purchase price of $36,000.00; these payments were deposited in the Chavez Law Firm's trust account in December 1996 and January 1997. The Chavez Law Firm was to hold these funds and deliver them to the sellers' attorney in exchange for the deed to the property. Respondent delivered a cashier's check for $18,000.00 to the sellers' attorney on or about March 13, 1997.

{6} The remaining $18,000.00 of the purchase price was not delivered in a timely manner. By letter dated April 15, 1997, respondent was informed that the sellers had authorized their attorney to terminate the agreement to sell their interest in the property if the remaining $18,000.00 owed by the buyers was not received by April 25, 1997. The sellers' attorney subsequently referred the matter to the disciplinary board on June 3, 1997. Respondent failed to deliver the remaining $18,000.00 needed to complete the transfer until July 3, 1997.

{7} The delay in delivering the remaining monies needed to complete the real estate transaction was due to the fact that the firm's trust account contained insufficient funds, in part, because respondent had misappropriated a substantial portion of the monies by transferring those monies to the firm's operating account and using them to pay the firm's expenses. On January 3, 1997, respondent signed his sister's name to a $1,000.00 check drawn on the firm's trust account. After respondent's sister discovered this check, she ratified his act of signing her name on it, and steps were taken to add respondent's name as an authorized signatory to the trust account. Although these steps were never completed, respondent signed his own name on checks drawn on the firm's trust account on at least seven occasions in February 1997. These additional checks totaled at least $8,250.00.

{8} On December 9, 1997, the chief disciplinary counsel filed a complaint against respondent regarding the aforementioned real estate transaction. Respondent failed to respond to disciplinary counsel's repeated inquiries regarding the complaint until after he was personally served with the specification of charges on January 29, 1999. In his response, respondent claimed that one of the buyers assented to the use of his funds by the firm during this period. At the hearing on these charges, however, both the buyer and respondent testified that the buyer had not assented to such use of the funds.

## B.

{9} On November 12, 1998, Gail Vernon–Kowalski filed a complaint with the disciplinary board alleging that respondent failed to account for two checks totaling $2,602.20 that she had provided to him in order to complete a quiet title action on her behalf. She had retained respondent to represent her in December 1994, which was prior to his suspension from the practice of law. The client paid him $1,500.00 in December 1994, and $1,102.20 in August 1995. In a letter enclosing the August 1995 check for $1,102.20, the client requested a "break down" of the monies she previously had sent to him. After not having spoken to respondent for some time, the client wrote to him again on July 2, 1998, complaining that he had not informed her of his suspension from the practice of law and also requesting an accounting of monies expended, a status report, and copies of any work that respondent had done on the case.

Respondent failed to respond to the client's request.

{10} Respondent also failed to reply to disciplinary counsel's numerous inquiries regarding the client's complaint until after he was personally served with the specification of charges arising from the complaint on December 6, 1999. During a prehearing conference before the chairperson of the hearing committee, respondent agreed and was ordered to make his files and trust account records regarding this matter available to disciplinary counsel at 10:00 a.m. on February 15, 2000. When disciplinary counsel arrived to review the trust account records at the appointed time, respondent was unable to produce them and again failed to produce the required trust account records the next day despite having been ordered to do so by the hearing committee. Respondent subsequently faxed a letter to disciplinary counsel explaining, for the first time, that he could not produce these trust account records because they do not exist.

### C.

{11} On July 16, 1999, Eutimio Rivera filed a complaint with the disciplinary board alleging that he and his son had paid respondent a total of $5,000.00 in January and February 1999 to defend them in a quiet title suit. One of the checks was made payable to respondent's spouse at respondent's request. The client alleged that respondent failed to advise him of respondent's suspension and that he understood respondent was an attorney. When respondent failed to file an answer on behalf of the client and his son, they retained a licensed attorney in Albuquerque, who sent a letter to respondent on May 6, 1999, requesting a refund of the fees paid by the client and his son. In a letter to the client's new attorney dated May 24, 1999, and on two or three other occasions, respondent stated that he would refund the monies he received from the client and his son. Nevertheless, respondent failed to refund these monies.

{12} Respondent also failed to respond to disciplinary counsel's repeated inquiries regarding this complaint until after he was served with the specification of charges on December 6, 1999. In his response, respondent attached unsigned drafts of pleadings that he allegedly had prepared, however, respondent failed to produce any additional files or documents regarding the matter in response to disciplinary counsel's discovery requests.

### D.

{13} On September 20, 1999, Larry Barela filed a complaint with the disciplinary board alleging that he had paid respondent $2,500.00 to represent him in a quiet title suit on January 12, 1999. The client's check for $2,500.00 was negotiated by respondent on January 25, 1999, and paid to respondent's spouse. The client alleged that respondent initially told him the quiet title suit would take approximately six months to complete. When contacted again by the client in May 1999, respondent stated that he would need more time to complete the matter. The client alleged that respondent never told him that respondent was suspended from the practice of law until he telephoned respondent a third time in July 1999 to obtain an update on his case. At that time, when respondent told the client that his license had not been reinstated, the client requested a refund of his monies, but respondent failed to provide any refund. The client subsequently filed suit in the Magistrate Court of Taos County to recover these monies.

{14} As with the other complaints that are the subject of these disciplinary proceedings, respondent failed to respond to disciplinary counsel's numerous inquiries regarding this complaint until after he was served with the specification of charges on December 6, 1999. In his response, respondent provided copies of unsigned drafts of pleadings that he allegedly had prepared on behalf of his client.

### II.

{15} In disciplinary cause numbered 01–99–366, we agree with the disciplinary board's conclusion that respondent committed several serious violations of the Rules of Professional Conduct arising from his employment with the Chavez Law Firm. We

also accept the agreement under which respondent declared his intention not to contest the allegations that he committed further acts of professional misconduct in disciplinary cause numbered 11–99–381 with regard to the aforementioned matters. The misconduct at issue warrants respondent's disbarment, the imposition of restrictions on his employment as a law clerk, a paralegal, or in any other position of a quasi-legal nature, and the award of discovery sanctions.

## A.

{16} The Rules of Professional Conduct and the Rules Governing Discipline still apply to respondent notwithstanding his contention that he was acting as a legal assistant for his sister or was only performing ministerial tasks necessary to close his practice at the time the misconduct occurred. "Attorneys, even though suspended, are still subject to the jurisdiction of this Court and are required to follow our rules in closing their practices." *In re Herkenhoff,* 119 N.M. 232, 234, 889 P.2d 840, 842 (1995) [hereinafter *Herkenhoff I* ]; *cf. Florida Bar v. Ross,* 732 So.2d 1037, 1041 (Fla.1998) ("[S]uspended attorneys ... are all subject to the continuing jurisdiction of this Court by virtue of the respective orders under which they were disciplined."). Respondent was so advised when the Court directed him to "observe all Rules of Professional Conduct and Rules Governing Discipline during the period of suspension." *In re Chavez,* 1996–NMSC–059, 122 N.M. 504, 507, 927 P.2d 1042, 1045.

{17} Respondent did not heed this direction. He violated Rule 16–115(A) by failing to maintain client funds in the Chavez Law Firm's trust account and by allowing that trust account to fall into a negative balance. He violated Rule 16–115(B) by failing to promptly deliver the funds with which he was entrusted to the parties entitled to receive those funds. His participation in the improper withdrawals from the Chavez Law Firm's trust account also violated Rules 16–102(D) and 16–804(C) because such participation amounted to conduct that was dishonest, fraudulent, deceitful, and a misrepresentation. His failure to respond to the chief disciplinary counsel's complaints violated Rules 16–801(B) and 16–803(D), which require all lawyers in this state to respond to lawful demands for information from disciplinary authorities and to give full cooperation and assistance to such authorities in discharging their functions and duties with respect to discipline and disciplinary procedures. Finally, respondent's trust account violations and his failure to respond to disciplinary counsel's inquiries violated Rules 16–804(D) and (H) because such conduct is prejudicial to the administration of justice and adversely reflects on his fitness to practice law.

{18} Under the circumstances presented here, respondent was a knowing participant in the willful misappropriation of funds from the Chavez Law Firm's trust account. Neither respondent's expectation that he would be able to replenish the trust account with a settlement from another case, nor the fact that the funds eventually were replenished and delivered to their rightful owner several months later, are sufficient to change this conclusion. *See In re Rohr,* 1997–NMSC–012, 122 N.M. 774, 931 P.2d 1390. Intent to permanently deprive the client of the funds in question is not a necessary element of misappropriation under Rule 16–115. Such misappropriation includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Wilson,* 81 N.J. 451, 409 A.2d 1153, 1155 n. 1 (1979).

{19} This Court consistently has held that "[m]isappropriation of client funds is a most egregious breach of an attorney's fiduciary duties and generally results in disbarment." *In re Darnell,* 1997–NMSC–025, 123 N.M. 323, 326, 940 P.2d 171, 174; *accord In re Wilson,* 409 A.2d at 1155. There is nothing in the record that would cause us to retreat from that holding in this case. On the contrary, we note the presence of several aggravating circumstances warranting an increase in the degree of discipline to be imposed, including respondent's substantial experience in the practice of law, his pattern of misconduct, his multiple offenses, his bad faith obstruction of the disciplinary proceeding, and his submission of a false statement

during the disciplinary process. All of these factors are recognized as aggravating circumstances in Section 9.22 of the American Bar Association's Standards for Imposing Lawyer Sanctions (1992) [hereinafter ABA Standards], and we agree that they "are appropriate for consideration in the imposition of sanctions for violations of the New Mexico Rules of Professional Conduct." *In re Lally*, 1999-NMSC-003, ¶ 14, 126 N.M. 566, 973 P.2d 243.

{20} Respondent's prior disciplinary record, which involves offenses of the same nature, also is an aggravating circumstance warranting an increase in the degree of discipline to be imposed in this case. *See In re Houston*, 1999-NMSC-032, ¶ 19, 127 N.M. 582, 985 P.2d 752; *In re Richards*, 1999-NMSC-030, ¶ 20, 127 N.M. 716, 986 P.2d 1117. When, as here, a lawyer continues to violate the Rules of Professional Conduct after his license to practice law has been suspended, this Court will not hesitate to impose the more severe sanction of disbarment. *See In re Schmidt*, 1996-NMSC-019, ¶ 1, 121 N.M. 640, 916 P.2d 840 [hereinafter *Schmidt I* ]; *Herkenhoff I*, 119 N.M. at 234, 889 P.2d at 842.

{21} A more severe sanction is necessary to protect the public when a lesser sanction has proven insufficient to stop a suspended lawyer from repeating the same type of misconduct with another client and to vindicate the Court's authority when a lawyer has disregarded the directions issued by the Court in a prior order imposing a term of suspension. *See Herkenhoff I*, 119 N.M. at 234, 889 P.2d at 842; *In re Schmidt*, 1997-NMSC-008, ¶ 14, 122 N.M. 770, 931 P.2d 1386 [hereinafter *Schmidt II* ]. Under the circumstances presented here, we have no choice but to disbar respondent from the practice of law.

### B.

{22} In and of itself, respondent's misconduct while employed with the Chavez Law Firm warrants his disbarment. Our duty to protect the public, the legal profession, and the administration of justice, however, does not end with respondent's disbarment. Ac-cordingly, we must address the other charges that were pending against respondent in disciplinary cause numbered 11–99–381 at the time he was disbarred by this Court in disciplinary cause numbered 01–99–366.

{23} Based on the uncontested allegations in cause numbered 11–99–381, we conclude that respondent violated Rule 16–103 by failing to act with reasonable diligence and promptness in representing the aforementioned clients. He violated Rule 16–104 by failing to keep his clients reasonably informed about the status of a matter, failing to explain the matter to the extent reasonably necessary to permit each client to make an informed decision regarding the representation, and failing to promptly comply with reasonable requests for information. He violated Rule 16–105 by collecting fees that were unreasonable. He violated Rule 16–107(B) by representing clients when that representation was materially limited by his own interests. He violated Rule 16–115 by failing to hold his clients' funds separate from his own funds in a trust account, failing to promptly deliver to each client any funds that client is entitled to receive, failing to keep complete records of trust account funds and client property in the manner required by Rule 17–204, and failing to promptly render a full accounting regarding such property. His failure to respond to disciplinary counsel's numerous inquiries regarding each complaint violated Rules 16–801(B) and 16–803(D), and amounted to conduct that was prejudicial to the administration of justice in violation of Rule 16–804(D). In addition, the aforementioned misconduct violates Rule 16–804(H) by adversely reflecting on respondent's fitness to practice law.

{24} With regard to his conduct in the Barela and Rivera matters, respondent also violated Rule 16–505(A) by practicing law in New Mexico where doing so violates the regulation of suspended lawyers under Rule 17–212(C). Rule 17–212(C) specifically prohibits a disbarred or suspended lawyer from accepting any new retainer or engaging as an attorney for another in any new case or legal matter of any nature, and we have stated unequivocally that "[a]n attorney who has been suspended or disbarred may not contin-

# 42

ue to provide legal services to members of the public, with or without remuneration." *In re Herkenhoff*, 1997–NMSC–007, ¶ 19, 122 N.M. 766, 931 P.2d 1382 [hereinafter *Herkenhoff II* ]; *see also Schmidt II*, 1997–NMSC–008, ¶ 13, 122 N.M. 770, 931 P.2d 1386 ("A lawyer who has been disbarred has been found seriously wanting in one or more of the areas of character, knowledge, or training, and, therefore, can no more provide representation to another person than can an unlicensed layperson.").

{25} Respondent cannot escape the conclusion that he was engaging in the unauthorized practice of law simply by claiming that he was a legal assistant acting as an intermediary for another lawyer, that he did not sign the pleadings he drafted for his clients, or that he had not entered an appearance in any court. "Only two types of legal representation are recognized—litigants appearing pro se or those appearing through licensed counsel of record." *Schmidt II*, 1997–NMSC–008, ¶ 13, 122 N.M. 770, 931 P.2d 1386. One is not authorized to undertake legal representation in any other capacity, regardless of whether one calls oneself a legal assistant, an intermediary, a scrivener, or just a friend. *See id.; cf. In re Bright*, 171 B.R. 799, 803 (Bankr.E.D.Mich.1994) ("A disclaimer that the non-lawyer is only providing 'scrivener' or 'paralegal' services is irrelevant if the non-lawyer in fact engages in unauthorized practice of law."); *Cincinnati Bar Ass'n v. Telford*, 85 Ohio St.3d 111, 707 N.E.2d 462, 464 (1999) (similar).

{26} Moreover, this Court has declined to adopt a definition of the practice of law that is limited to signing pleadings or appearing in court on another's behalf. Instead, we have determined what constitutes the practice of law in each case by conducting a fact-specific inquiry that takes several different indicators into consideration. *See State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.*, 85 N.M. 521, 526, 514 P.2d 40, 45 (1973); *State Bar v. Guardian Abstract & Title Co.*, 91 N.M. 434, 439, 575 P.2d 943, 948 (1978). Under this approach, "[t]he practice of law is not restricted to appearances in court; it also encompasses giving legal advice and counsel." *Telford*,

707 N.E.2d at 463; *see also State ex rel. Disciplinary Comm'n of the Supreme Court v. Owen*, 486 N.E.2d 1012, 1013 (Ind.1986) ("[T]he core element of practicing law is the giving of legal advice to a client. Merely entering into such a relationship constitutes the practice of law."); *Kennedy v. Bar Association of Montgomery County, Inc.*, 316 Md. 646, 561 A.2d 200, 210 (1989) (concluding that "the very acts of interview, analysis and explanation of legal rights constitute practicing law "); *In re Conduct of Devers*, 328 Or. 230, 974 P.2d 191, 196 (1999) (concluding that act of revising and redrafting settlement agreement for client "is the work of a lawyer, not a scrivener"). Thus, we have held that an unlicensed person "was engaging in the practice of law by providing [a] client with legal advice and assistance" even though the unlicensed person had not entered an appearance or otherwise disclosed his participation in the case to the court or opposing counsel. *Herkenhoff II*, 1997–NMSC–007, ¶ 14, 122 N.M. 766, 931 P.2d 1382.

{27} An unlicensed person may not use a licensed attorney simply as a facade to cover up the fact that he or she is engaging in the unauthorized practice of law. *See Attorney Grievance Comm'n v. James*, 355 Md. 465, 735 A.2d 1027, 1039 (1999) (disbarring attorney who "simply continued to practice out of the same office, while using, . . . another attorney as a facade" during period of suspension); *In re Mitchell*, 901 F.2d 1179, 1188 (3d Cir.1990) (concluding that licensed attorney cannot lawfully serve as "front" for suspended attorney by "freely permit[ting] his name to be used without exercising any supervision"). While an unlicensed person's preparation of legal documents ordinarily does not constitute the unauthorized practice of law when it is performed under the proper supervision of a licensed attorney who retains responsibility for the unlicensed person's work, *see* Rule 16–505 cmt., the same conclusion does not follow when proper supervision and exercise of responsibility by a licensed attorney is absent. A licensed attorney cannot lawfully "abdicate all responsibilities to legal assistants" by "[h]aving a legal assistant conduct all meetings with the

clients, during which the clients' objectives and the means for pursuing them are discussed." *In re Houston*, 1999–NMSC–032, ¶ 17, 127 N.M. 582, 985 P.2d 752; *see also In re Bright*, 171 B.R. at 805 ("The lawyer is not adequately supervising the non-lawyer if the lawyer does not know about the existence or content of the meetings between the non-lawyer and the [client], if the lawyer relies solely on the non-lawyer as intermediary, neglecting to meet directly with the client, or if the lawyer fails to use his independent professional judgment to determine which documents prepared by the non-lawyer should be communicated outside the law office." (citations omitted)); *Florida Bar v. Beach*, 675 So.2d 106, 109 (Fla.1996) (concluding that unlicensed person is not authorized to act as "conduit for giving legal advice by obtaining and relaying, without supervision, case-specific information to persons whom [the lawyer] never actually met or consulted"). Under such circumstances, the unlicensed person is engaging in the unauthorized practice of law "by deciding when a lawyer needs to be called, by determining which lawyer to call, by controlling what questions are asked and how the questions are phrased, and by personally interpreting the information received from the lawyer." *In re Bright*, 171 B.R. at 804.

**{28}** "Where the individual charged with unauthorized practice [of law] has had legal training, his activities are subject to even closer scrutiny." *In re Discipline of Jorissen*, 391 N.W.2d 822, 825 (Minn. 1986); *accord In re Mitchell*, 901 F.2d at 1185. In the case of a suspended lawyer, closer scrutiny is required in part because that lawyer remains subject to the Court's disciplinary jurisdiction by virtue of the Court's prior disciplinary orders and the suspended lawyer's continuing obligations under the Rules Governing Discipline and the Rules of Professional Conduct. *See Herkenhoff I*, 119 N.M. at 234, 889 P.2d at 842; *Ross*, 732 So.2d at 1041. Respondent was directed to observe all the Rules of Professional Conduct during his period of suspension. *See In re Chavez*, 1996–NMSC–059, 122 N.M. at 506, 927 P.2d at 1045. Those rules include provisions that prohibit him from engaging "in

conduct involving dishonesty, fraud, deceit or misrepresentation," Rule 16–804(C), or "conduct that the lawyer knows is criminal or fraudulent," Rule 16–102(D).

**{29}** It is a violation of Rules 16–102(D) and 16–804(C) for a suspended attorney to undertake legal representation by intentionally misleading others to believe that he or she still is licensed to practice law. *Cf. In re Conduct of Devers*, 974 P.2d at 196 ("[I]ntentional failure to disclose a suspension to a client ... is a misrepresentation of a material fact."). A misrepresentation of this nature "need not be verbal. One can make a misrepresentation by one's actions as well." *In re Discipline of Jorissen*, 391 N.W.2d at 826. According to the uncontested allegations before us, there is no question that respondent intentionally "led others to believe he was an attorney representing a client. Such conduct is dishonest, fraudulent, and deceitful ...." *Id.* Thus, in addition to concluding that respondent violated Rules 16–505(A) and 17–212(C) by engaging in the unauthorized practice of law during his suspension, we also conclude that he violated Rules 16–102(D) and 16–804(C) by misrepresenting the status of his license to his clients.

**{30}** Engaging in the unauthorized practice of law while suspended from the practice of law provides an independent justification for disbarring respondent. Under Section 8.1 of the ABA Standards, "[d]isbarment is generally appropriate when a lawyer ... intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession." *Standards for Imposing Lawyer Sanctions* § 8.1 at 47 (1992). The commentary to this standard states that "[t]he most common case is one where a lawyer has been suspended but, nevertheless, practices law. The courts are generally in agreement in imposing disbarment in such cases." *Id.*; *accord James*, 735 A.2d at 1039; *In re Conduct of Devers*, 974 P.2d at 198.

{31} Respondent's continued misconduct during the period of his suspension also warrants restrictions on his future employment as a law clerk, a paralegal, or in any other

44

position of a quasi-legal nature. *Cf.* Rule 16–505(D) ("A lawyer shall not ... employ or continue the employment of a disbarred or suspended lawyer as a law clerk, a paralegal or in any other position of a quasi-legal nature if the suspended or disbarred lawyer has been specifically prohibited from accepting or continuing such employment by order of the Supreme Court or the disciplinary board."). Serious restrictions on respondent's authority to perform work of a quasi-legal nature are particularly appropriate given the numerous instances of misconduct that arose while he claimed to be working as a legal assistant for the Chavez Law Firm and later as an independent paralegal. One of the purposes of our rules governing resigned, disbarred, or suspended attorneys "permits this Court to assure the public that an attorney will not continue to practice law after becoming unlicensed." *Herkenhoff I,* 119 N.M. at 232, 233, 889 P.2d at 840, 841. The restrictions we impose in this case are consistent with this purpose and decisions of disciplinary authorities in other jurisdictions. *See, e.g., In re Mitchell,* 901 F.2d at 1185–87; J. Anthony McClain, *Employment of Disbarred or Suspended Attorneys,* 58 Ala. Law. 106 (1997).

## C.

■ {32} In disciplinary cause numbered 11–99–381, the hearing committee awarded discovery sanctions against respondent after finding that he repeatedly failed to produce documents at the times ordered by the committee. These sanctions included: (1) permitting petitioner to amend the specification of charges by adding an allegation that respondent violated the record keeping requirements of Rule 16–115(A); (2) taking it as established that respondent did not maintain a trust account for the fee received from Ms. Vernon–Kowalski; (3) prohibiting respondent from introducing into evidence any documentary material that was not provided to petitioner as of the deadline imposed by the hearing committee; and (4) awarding as costs the reasonable value of the time that petitioner's counsel spent waiting for respondent to arrive and produce the requested documents after the discovery deadline had expired. Following the submission of affidavits by disciplinary counsel, the hearing committee set the reasonable value of petitioner's counsel's time at $125.00 per hour (which was the hourly rate that respondent had charged his clients) for a total of $500.00.

{33} We affirm the hearing committee's award of discovery sanctions in this disciplinary proceeding. Rule 1–037(B)(2) NMRA 2000 of the Rules of Civil Procedure provides for the imposition of discovery sanctions for failure to obey an order to provide or permit discovery. The sanctions imposed here are of the type contemplated by this rule.

■ {34} "A court order issued under Rule [1–0]37(A) is not a prerequisite to imposition of Rule [1–0]37(B) sanctions; any clearly articulated order requiring or permitting discovery can provide the basis of sanctions for noncompliance." *Marchman v. NCNB Texas Nat'l Bank,* 120 N.M. 74, 90, 898 P.2d 709, 725 (1995). Further, New Mexico courts have noted the authority of some administrative tribunals to impose discovery sanctions in certain situations. *See, e.g., Weiss v. New Mexico Bd. of Dentistry,* 110 N.M. 574, 581, 798 P.2d 175, 182 (1990); *Lara v. City of Albuquerque,* 1999–NMCA–012, ¶¶ 18–21, 126 N.M. 455, 971 P.2d 846; *Sandoval v. United Nuclear Corp.,* 105 N.M. 105, 107, 729 P.2d 503, 505 (Ct.App.1986). Reading Rule 1–037(B) together with the procedural components of the Rules Governing Discipline, we hold that the disciplinary board and its duly appointed hearing committees are authorized to impose discovery sanctions under appropriate circumstances, such as those presented here.

{35} Rule 17–301(B) of the Rules Governing Discipline states that the Rules of Civil Procedure shall be used in formal disciplinary proceedings except where clearly inapplicable to disciplinary proceedings or inconsistent with or otherwise provided for by the Rules Governing Discipline. While the Rules of Professional Conduct already require lawyers to respond to disciplinary counsel's requests for a response to a complaint and to provide additional information to disciplinary counsel if asked to do so, *see* Rules 16–801(B), 16–803(D); *Schmidt I,* 1996–NMSC–019, ¶ 7, 121 N.M. 640, 916 P.2d

840, we do not view the discovery sanctions available under Rule 1–037(B) as clearly inapplicable, inconsistent with, or otherwise provided for by the Rules Governing Discipline when such cooperation is lacking and discovery proceedings under Rule 17–311 become necessary. Hearing committees have the power and the duty to conduct hearings into formal charges of misconduct upon assignment by the chair of the disciplinary board. *See* Rule 17–104(C)(1). In carrying out this duty, discovery sanctions under Rule 1–037(B)(2) must be available to a hearing committee "in order to achieve compliance with its orders and to insure that a determination of a case on the merits is made only after a full, good faith disclosure of all relevant facts." *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 241, 629 P.2d 231, 317 (1980). For these reasons, we affirm the discovery sanctions imposed in this case.

## III.

{36} NOW, THEREFORE, IT IS ORDERED that Santiago R. Chavez is hereby DISBARRED from the practice of law pursuant to Rule 17–206(A)(1).

{37} IT IS FURTHER ORDERED that during disbarment respondent shall not (1) handle any client funds, including payment of unearned fees and (2) operate as an independent paralegal.

{38} IT IS FURTHER ORDERED that respondent may act only as a legal assistant under direct supervision of an attorney who is unrelated to respondent and who is approved by the office of disciplinary counsel.

{39} IT IS FURTHER ORDERED that should respondent be reinstated to the practice of law, he shall be placed on probation for no less than one year during which time all trust account activities undertaken by respondent shall be supervised on a monthly basis by an attorney who is unrelated to respondent or by a CPA who is unrelated to respondent, either of whom shall be approved by the office of disciplinary counsel.

{40} IT IS FURTHER ORDERED that respondent shall pay the normal hourly rate charged by the supervising attorney or CPA.

{41} IT IS FURTHER ORDERED that Respondent shall satisfy all of the conditions ordered by this Court on October 2, 1996, and all conditions specified herein, prior to any application for reinstatement.

{42} IT IS FURTHER ORDERED that the following additional discipline shall be imposed:

(1) Respondent shall remain subject to all provisions in this Court's order dated February 23, 2000;

(2) Respondent shall remain subject to all provisions of this Court's opinion dated November 20, 1996;

(3) Respondent shall make restitution to the following persons in the following amounts on or before June 1, 2000, with interest to accrue at the rate of fifteen percent (15%) per annum on any unpaid balance after that date, and such restitution shall be reduced to transcripts of judgment:

| | |
|---|---|
| (a) Larry Barela | $2,500.00 |
| (b) Eutimio Rivera | $3,500.00 |
| (c) Jose Rivera | $1,500.00 |
| (d) Gail B. Vernon–Kowalski | $2,602.20 |

(4) Respondent shall return any files and any documents in his possession regarding Larry Barela, Eutimio Rivera, Jose Rivera, and Gail B. Vernon–Kowalski (including abstracts of title and surveys) to each of these former clients on or before June 1, 2000.

(5) Respondent shall pay the costs of all disciplinary proceedings in the amount of $21,007.73, plus costs awarded as discovery sanctions in the amount of $500.00, on or before March 1, 2001, with interest to accrue at the rate of fifteen percent (15%) per annum on any unpaid balance after that date, and such costs shall be reduced to a transcript of judgment.

(6) In addition to the provisions of this Court's order dated February 23, 2000, respondent's employment of a legal or quasi-legal nature shall be subject to the following conditions:

(a) Respondent shall advise disciplinary counsel within ten (10) days of any employment (or change of employment) in any capacity with a person or firm that provides legal services;

(b) Respondent shall function as a legal assistant, legal secretary, paralegal, law clerk, employee of a lawyer, or employee of a firm that provides legal services in any capacity only under the close supervision of a supervising attorney within that entity who is approved by disciplinary counsel. Such supervision shall be continuous and regular;

(c) In order to be considered for approval as a supervising attorney, the proposed supervising attorney must file a written report with disciplinary counsel agreeing to provide supervision and outlining the type of work being performed by respondent as well as the supervising mechanism utilized by the supervising attorney to supervise the actions of respondent;

(d) Under no circumstances shall respondent solicit, initiate, or accept the representation of a client on his own behalf or on behalf of another. If respondent receives any inquiries which might reasonably be interpreted as a request for legal representation, respondent shall inform the person making the inquiry that respondent is not licensed to practice law and can be of no assistance to them in obtaining legal representation;

(e) Respondent shall have no contact with his supervising attorney's clients or any clients of the supervising attorney's firm except when his supervising attorney is present or otherwise in a position to directly supervise respondent's communications with the client;

(f) In any communication with a client that occurs outside the presence of the supervising attorney, respondent shall provide the following notice: "Please be advised that I, Santiago 'Jaime' R. Chavez, am not licensed to practice law and cannot provide you with any legal advice or accept any fees from you. Should you have any unanswered questions or concerns about my communications with you, please contact my supervising attorney, [supervisor's name], at [supervisor's telephone number]";

(g) Respondent's work area must be physically located within the same office or premises as the supervising attorney;

(h) During the course of his employment, respondent shall be prohibited from attending any court or administrative proceedings unless his supervising attorney is present, makes an appearance, and notifies or has notified the court or tribunal of respondent's status as a non-lawyer;

(i) Respondent shall be prohibited from having any access whatsoever to client funds; and

(j) Respondent shall bear the entire responsibility of ensuring that his supervising attorney reports to disciplinary counsel and confirms the parameters of respondent's employment to disciplinary counsel on at least a quarterly basis.

(7) Should respondent be permitted to apply for reinstatement to the practice of law, he must demonstrate to the satisfaction of the hearing committee that all of the conditions specified herein have been satisfied before his application for reinstatement can be granted; and

(8) Should any of the terms and conditions be violated by respondent, disciplinary counsel shall bring such violation to the attention of this Court pursuant to Rule 17–206(G) and, should respondent be found in contempt, this Court may impose additional sanctions including fines, further restrictions on his law-related employment, and further restrictions on any application for reinstatement.

{43}   IT IS FURTHER ORDERED that respondent is hereby sanctioned in the amount of $500.00 in costs for the time disciplinary counsel had to wait past the appointed time at which respondent was to have the documents ready for review (two hours for two attorneys at $125.00 per hour).

{44}   IT IS SO ORDERED.