In the Matter of Armando C de BACA,
Attorney-Respondent.

No. 98SA456.

Supreme Court of Colorado,
En Banc.

Sept. 11, 2000.

Rehearing Denied Oct. 23, 2000*.

* Justice MARTINEZ and Justice BENDER do not participate.

John S. Gleason, Attorney Regulation Counsel, Denver, Colorado, Attorney for Complainant.

John B. Kusic, Denver, Colorado, Richard M. Borchers, P.C., Westminster, Colorado, Attorneys for Attorney–Respondent.

PER CURIAM.

Armando C de Baca is the respondent in this attorney regulation case. Having accepted an undivided 40% interest in real property of a client, as a fee, he engaged in a dishonest course of conduct to deprive the client's ex-wife of the benefit of her undivided one-half interest in the property. He misrepresented to third parties that the client was the sole owner, refused to recognize the ex-wife's bona fide interest in the property, and sought to deprive her of environmental settlement funds to which she was entitled as an owner. A hearing panel of our former grievance committee[1] approved the board's findings and its recommendation that the respondent be disbarred.

C de Baca excepted to the panel's action. He asserts first that the hearing board erred when it concluded that he had engaged in dishonest conduct and, second, that disbarment is too severe a sanction given prior cases. In a supplemental brief, he alleges that, in making its findings and recommendation, the board improperly considered conduct that he engaged in after he was suspended from the practice of law, and that this violated his due process rights. We reject these contentions and conclude that disbarment is appropriate. Accordingly, we accept the panel's and board's recommendation and order that the respondent be disbarred.

I.

Armando C de Baca was admitted to practice law in Colorado in 1973. We suspended him from the practice of law, effective December 15, 1993, for ninety days, and we required him to petition for reinstatement. *See People v. C de Baca*, 862 P.2d 273, 275 (Colo.1993). Then, while he was still under suspension from our 1993 order, we suspended him for an additional two years for conduct occurring before or at the same time as that for which he was suspended in 1993. *See People v. C de Baca*, 948 P.2d 1, 4 (Colo.1997). He has not been reinstated from either suspension and remains suspended to this day.

The current disciplinary charges all involve C de Baca's connection with certain real property located in the Globeville area of Denver (the Pearl Street property). After an evidentiary hearing at which the respondent and other witnesses testified, the hearing board made the following findings by clear and convincing evidence.

On January 29, 1981, Augustina V. Yanez quitclaimed her interest in the Pearl Street

---

1. By order of the supreme court dated June 30, 1998, effective January 1, 1999, the grievance committee was superseded by the reorganization of the attorney regulation system. The same order provided: "All attorney discipline cases in which trial has occurred prior to January 1, 1999 before a Hearing Board ... shall be reviewed by the applicable Hearing Panel at a final meeting to be held in 1999." Order re Reorganization of the Attorney Regulation System (Colo. June 30, 1998), *reprinted in* 12 C.R.S. at 605 (1999). This case was tried on June 24 and 25, 1998, and was reviewed by the hearing panel on October 10, 1998.

property to her then-husband Alfredo Rodriguez. Their marriage was dissolved by decree of dissolution on September 5, 1985. In the dissolution proceeding, C de Baca represented Rodriguez and Joe Clarence Medina represented Yanez. The decree included stipulated permanent orders that provided that the Pearl Street property be appraised and listed for sale, with the net proceeds of the sale to be divided equally between Yanez and Rodriguez. The orders also provided that Yanez was entitled to the use and benefit of the property until it was sold. In exchange, Yanez was required to make the monthly mortgage and insurance payments, and pay the taxes. Yanez obtained an appraisal of the property for $13,000, but she was unable to sell it. Yanez paid the property taxes and by 1990 had paid off the mortgage.

In 1990, Rodriguez hired Ronald Mook, an Oklahoma lawyer, to defend him on criminal charges he faced in Oklahoma. Rodriguez offered the Pearl Street property to pay all or part of Mook's fee, and told Mook to contact C de Baca to verify his representations. When Mook spoke with him, C de Baca told Mook that he was familiar with the Pearl Street property, that Rodriguez owned it, and that Rodriguez had the power to convey the title to the property. At no time did C de Baca tell Mook about the 1985 dissolution decree and Yanez's interest in the property. Because Rodriguez still owed C de Baca fees for his dissolution, an agreement was reached whereby Mook took a 60% interest in the Pearl Street property from Rodriguez, and C de Baca took a 40% interest in the property. On September 21, 1990, Rodriguez transferred the property to Mook and C de Baca by quitclaim deed.

The residents of the Globeville area of Denver, where the Pearl Street property was located, filed a class-action lawsuit against ASARCO in the District Court for the City and County of Denver alleging that ASARCO's smelting facility contaminated real property in the area. A settlement was reached in the fall of 1993. The district court established the Globeville Claims Administration Fund (the Fund) to administer and distribute settlement funds to the real property owners in the area. C de Baca, Mook, and Yanez all applied for compensation from the Fund. The Fund denied Yanez's claim on September 30, 1993, on the basis that Rodriguez had deeded the property to C de Baca and Mook in 1990. In February 1994, the Fund paid C de Baca and Mook $9,649.46. C de Baca and Mook received a second payment in June 1996 in the amount of $4,025.31.

In the spring of 1994, Medina contacted C de Baca on behalf of Yanez regarding the Pearl Street property. Medina asked C de Baca on what basis he was claiming an ownership interest in the property and the settlement funds in light of the 1985 dissolution decree granting Yanez a 50% interest in the net sale proceeds from the property. C de Baca told Medina that the Fund's denial of Yanez's claim was "res judicata" of any claim she might have to the property. C de Baca refused to convey either any interest in the property or any of the benefits he received from the fund to Yanez.

In September 1995 Rodrigo S. Gloria was representing Yanez. On September 13, Gloria sent a letter to C de Baca asking what his legal position was on the Pearl Street property and the settlement funds. C de Baca reasserted his ownership interest in the property on the basis of the Fund's decision. On September 21, Gloria made a demand on C de Baca to transfer his interest to Yanez and to pay her the settlement funds he had already received. When the demands were not met, Gloria filed a quiet title action against C de Baca. Following a trial in July 1997, the court entered judgment against C de Baca, extinguishing his interest in the Pearl Street property, and granting that interest to Yanez, including the interest in any future distributions from the Fund.

Resolving several disputed issues of fact against C de Baca, the hearing board concluded that he engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation by: accepting a 40% interest in the Pearl Street property when he knew that Yanez had an interest in the property; making affirmative misrepresentations to Mook regarding the status of the title and ownership of the property; filing a claim with the

Fund asserting an interest in the settlement funds; refusing to recognize Yanez's rights in the Property and to the settlement funds despite Medina's and Gloria's demands; failing to take appropriate steps to remedy the situation in September 1993 when C de Baca claimed he "remembered" that Yanez owned an interest in the property; and finally, by his representation in the quiet title case that his right to an ownership interest in the property and the settlement funds was superior to Yanez's. This violated DR 1–102(A)(4) for conduct occurring prior to January 1, 1993, the effective date of the Rules of Professional Conduct, and Colo. RPC 8.4(c) for conduct thereafter. Without identifying the specific conduct, the board found that "[f]or the same reasons" C de Baca also violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), and DR 1–102(A)(6) (engaging in any other conduct adversely reflecting on the lawyer's fitness to practice law). The board did not specify what conduct was prejudicial to the administration of justice or adversely reflected on the fitness to practice law. We focus on the respondent's dishonest conduct that violated DR 1–102(A)(4) and Colo. RPC 8.4(c).

## II.

The hearing panel approved the findings and the recommendation of the hearing board that C de Baca be disbarred. C de Baca filed exceptions to the findings and recommendation. He contends that the Rules of Professional Conduct do not apply to the conduct of a lawyer who has been suspended and must prove that he should be reinstated. He therefore asserts that the board erred in considering any conduct of his that occurred after December 15, 1993, the effective date of his suspension on unrelated charges.[2] C de Baca also alleges that there was insufficient evidence to support the finding that he engaged in dishonest conduct, and that the recommended sanction of dis-

barment is too harsh. We address these issues in turn.

### A. Post–Suspension Conduct

■ C de Baca claims that it was error to apply the Rules of Professional Conduct to him for conduct that did not constitute the practice of law after he was suspended. We have disciplined lawyers for practicing law after an order of suspension, *see, e.g., People v. Stauffer*, 858 P.2d 694, 698 (Colo.1993), and for misconduct that occurred prior to the order of suspension or disbarment, *see C de Baca*, 948 P.2d at 4. In this case, some of C de Baca's misconduct occurred after the December 1993 order of suspension and did not itself constitute the practice of law.

However, C de Baca's position is foreclosed by our opinion in *People v. Dolan*, 873 P.2d 766 (Colo.1994). We had previously suspended the lawyer in *Dolan* for ninety days. *See People v. Dolan*, 813 P.2d 733, 736 (Colo.1991). Subsequently, Dolan was charged with failing to comply with C.R.C.P. 241.21 regarding the actions a lawyer must take after being suspended, and with violating the former Code of Professional Responsibility, specifically DR 6–101(A)(3) (neglecting a legal matter entrusted to a lawyer), DR 7–101(A)(3) (intentionally prejudicing or damaging a client during the course of the professional relationship), and DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice). *Dolan* 873 P.2d at 767–68. In defense, Dolan took the position before the hearing board that the grievance committee did not have jurisdiction over him because the conduct specified in the complaint occurred after he was suspended. *See id.* at 766 n. 1.

We rejected this argument, holding that "the lawyer is subject to the jurisdiction of this court and the grievance committee for misconduct committed while the lawyer is suspended." *Id.* We made it clear that Dolan was not being disciplined in the 1994 case for

2. C de Baca did not raise this argument before the hearing board or hearing panel, nor did he raise it in his exceptions or opening brief in this court. After the complainant filed an answer brief, C de Baca filed a motion for leave to raise additional issues for review, including this one.

Under ordinary circumstances, the argument would be deemed to have been waived. However, because this is an issue solely of law, we granted C de Baca's motion to raise the argument in a supplemental brief.

continuing to practice law after he was suspended. *See id.* at 769. We stated, however, that we found it "equally serious that the respondent took no steps to protect the legal interests of [his clients] as he was required to do by C.R.C.P. 241.21, and then asserted before the district court and the grievance committee that he could take no action on [the clients'] behalf because of the order of suspension." *Id.* We disbarred *Dolan* for the misconduct he committed after being suspended. *See id.*

*Dolan* therefore stands for the proposition that a lawyer may be disciplined for engaging in conduct violating the rules of the profession even though the lawyer was suspended at the time of the misconduct. The Rules of Professional Conduct became effective on January 1, 1993, prior to C de Baca's suspension. C.R.C.P. 241.1(c), 12 C.R.S. (1998) (repealed and reenacted as C.R.C.P. 251.1) provided that "[o]n January 1, 1993, and thereafter, *the conduct of lawyers licensed to practice law* in the state of Colorado shall be governed by the Colorado Rules of Professional Conduct." (Emphasis added.) "Suspension is the temporary suspension by the Supreme Court of a lawyer's license to practice law in this state, subject to reinstatement as provided in C.R.C.P. 241.22(b)." C.R.C.P. 241.7(2), 12 C.R.S. (1998) (repealed and reenacted as C.R.C.P. 251.6(b)).

■ A lawyer who is suspended is therefore still a lawyer and is still a member of the bar. *See Florida Bar v. Ross,* 732 So.2d 1037, 1040 (Fla.1998). A lawyer's license to practice law is revoked when a lawyer is disbarred, however, and that person is no longer a member of the bar. *See* C.R.C.P. 241.22(a), 12 C.R.S. (1998) (repealed and reenacted as C.R.C.P. 251.29(a)) (specifying the exclusive means by which a disbarred lawyer may seek to be *readmitted* to the Bar of the State of Colorado). Because he was suspended and not disbarred, C de Baca retained his license to practice law and membership in the Colorado Bar.

Other courts that have considered this question have concluded that a suspended lawyer remains subject to the disciplinary jurisdiction of the court for acts committed while suspended. *See, e.g., Ross,* 732 So.2d at 1040 (stating that although a lawyer is suspended, he is still a member of the Florida Bar, and, as such, is subject to the same ethical and professional standards as any other member of the bar and the continuing disciplinary jurisdiction of the Florida Supreme Court); *In re Chavez,* 129 N.M. 35, 1 P.3d 417, 422 (2000) (holding that the Rules of Professional Conduct still apply to a suspended lawyer serving as a legal assistant); *In re Complaint as to the Conduct of Hereford,* 306 Or. 69, 756 P.2d 30, 32 (1988) (stating that the Oregon Supreme Court possesses supervisory powers over suspended lawyers during the period of suspension and that suspended lawyers still have ethical obligations, the violation of which can lead to further sanctions). We conclude, therefore, that C de Baca remains fully answerable for violations of his ethical obligations under the Rules of Professional Conduct that were committed while he was suspended.

■ C de Baca also argues that he was not given notice that he would be held to ethical standards after the effective date of his suspension, December 15, 1993. Thus, he asserts that to apply the Rules of Professional Conduct to his actions after that date violates due process. We disagree. As pointed out above, C de Baca retained his license to practice law following his 1993 suspension and C.R.C.P. 241.1(c) provided that after January 1, 1993, lawyers' conduct was governed by the Rules of Professional Conduct. Moreover, C.R.C.P. 241.6, 12 C.R.S. (1998) (repealed and reenacted as C.R.C.P. 251.5) provided:

Misconduct by a lawyer ..., including the following acts or omissions, shall constitute grounds for discipline, *whether or not the act or omission occurred in the course of an attorney-client relationship:*

(1) *Any act or omission which violates the provisions of the Code of Professional Responsibility* or the Colorado Rules of Professional Conduct;

(2) Any act or omission which violates accepted rules or standards of legal ethics;

*(3) Any act or omission which violates the highest standards of honesty, justice, or morality;*

. . . .

This enumeration of acts and omissions constituting grounds for discipline is not exclusive, and other acts or omissions amounting to unprofessional conduct may constitute grounds for discipline.

(Emphasis added.) This Rule placed C de Baca on notice that his conduct after the effective date of his suspension would be judged against the Rules of Professional Conduct and "the highest standards of honesty, justice, and morality."

Furthermore, the amended complaint made it explicitly clear to C de Baca, and to his attorney, that he was charged, in part, with ethical violations occurring after December 15, 1993. At no point in the proceedings, through the hearing and the filing of his opening brief in this court, did C de Baca raise a problem with the notice. We conclude that C de Baca, along with other suspended lawyers, had adequate notice that he was required to conform his conduct to the ethical standards of a lawyer.

C de Baca next argues that it is unconstitutional to apply the Rules of Professional Conduct to him after the effective date of his suspension. This contention is predicated, however, on the assumption that he no longer possesses a license to practice law, a contention we have already rejected. We therefore also reject his conclusion.

Having determined that the hearing board properly considered conduct that occurred after December 15, 1993, we turn to C de Baca's remaining arguments.

### B. Sufficiency of the Evidence

■ C de Baca claims that the evidence before the hearing board was insufficient to establish that he engaged in dishonest conduct. Specifically, he asserts that the hearing board should have given significant weight to the judge's findings in the quiet title action Yanez filed against him. In July 1997, the district court entered judgment against C de Baca, extinguishing his interest in the Pearl Street property, and granting that interest to Yanez, including the interest in any future distributions from the Fund. However, C de Baca points to the following finding:

Although C de Baca technically converted to his own use plaintiff's share of the Globeville settlement proceeds, any damage plaintiff suffered is offset by C de Baca's expenditures to repair and improve the property. Therefore, no money damages are awarded against C de Baca for conversion.

However, this finding states that C de Baca "technically converted" Yanez's settlement proceeds, implies dishonesty on C de Baca's part, and does not undercut the hearing board's findings. Additionally, the fact that the court awarded Yanez no money damages does not prevent either the complainant or the hearing board from reaching the conclusion that C de Baca did injure Yanez.

■ C de Baca also adduces evidence from the record to support his claim that he did not remember that Yanez still had an interest in the property until long after Rodriguez quitclaimed the property to Mook and him. Thus, C de Baca asserts that the evidence did not prove that he acted dishonestly. However, the evidence before the hearing board was conflicting. The hearing board weighed the evidence and the credibility of the witnesses and resolved the conflicts against C de Baca. Our standard of review of factual matters in lawyer discipline cases is well-settled. "When approved by the hearing panel, the board's factual findings are binding on this court unless, after considering the record as a whole, the findings are unsupported by substantial evidence." *People v. Bennett,* 810 P.2d 661, 665 (Colo.1991). "When, as here, it acts as fact-finder, the hearing board has the duty to assess the credibility of the evidence before it, controverted and uncontroverted." *People v. Robnett,* 859 P.2d 872, 877 (Colo.1993). "In determining whether the board's findings are supported by substantial evidence, it is not within the province of this court to measure the weight of the evidence or to resolve the credibility of witnesses." *People v. Distel,* 759 P.2d 654, 662 (Colo.1988). The record

supports the hearing board's findings and we will not overturn them.

### C. The Sanction

 C de Baca argues that even if we accept the board's findings that he engaged in misconduct, disbarment is too severe a sanction. He claims that, although his history of discipline is extensive, "he has not had the opportunity to prove, after his suspension, that he recognizes the deficiencies in his practice and will change those practices given the chance."

A history of previous discipline is an aggravating factor for purposes of determining the proper level of discipline. *See* ABA *Standards for Imposing Lawyer Sanctions* 9.22(a) (1991 & Supp.1992). C de Baca was admonished in 1979 for neglect and failure to return documents to his clients. He was admonished in 1980 for neglect, and again admonished in 1981 for neglect and for the intentional failure to act. He was admonished in 1983 for neglect, and publicly censured in 1987 for neglect and for wrongful disbursement of funds to a client, *see People v. C de Baca*, 744 P.2d 512 (Colo.1987). In 1990, C de Baca was once more admonished for neglect, and in 1991 he was privately censured for engaging in conduct prejudicial to the administration of justice. We suspended C de Baca in 1993 for ninety days and required that he petition for reinstatement in order to demonstrate by clear and convincing evidence that he was once again fit to practice law. *See C de Baca*, 862 P.2d at 275. Finally, while he remained suspended under our 1993 order, we suspended him in 1997 for an additional two years for neglecting legal matters and making misrepresentations, which occurred before or at the same time as that for which he was suspended in 1993. *See C de Baca*, 948 P.2d at 4.

In his opening brief, C de Baca claims that the misconduct in this case all arose from his conduct prior to his 1993 suspension, and that he has not been given the chance to prove he has been rehabilitated following suspension. This is inconsistent with his argument in part II(A) above where he contended that he was being disciplined, at least in part, for conduct that occurred *after* he was suspended.

The hearing board found no factors in mitigation, and we conclude that it is unnecessary to list the other aggravating factors present in the case. The most important factor in this case is the prior discipline. Despite frequent opportunities for rehabilitation, C de Baca continued to engage in misconduct. Disbarment is merited under the circumstances. Accordingly, we accept the board's and panel's recommendation, and we order that C de Baca be disbarred.

### III.

Armando C de Baca is hereby disbarred, effective immediately. He is further ordered to pay the costs of this proceeding in the amount of $2,163.31, within ninety days of the date this opinion is released, to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432.

Justice MARTINEZ and Justice BENDER do not participate.