483 P.3d 289
The PEOPLE of the State of Colorado, Complainant
v.Alison MAYNARD, #16561, Respondent
Case Number: 20PDJ018
Office of Presiding Disciplinary Judge of the Supreme Court of Colorado.
January 7, 2021 OPINION AND DECISION IMPOSING SANCTIONS UNDER C.R.C.P. 251.19(b)
WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE While she was suspended from the practice of law, Alison Maynard ("Respondent") knowingly assisted parties in litigation by drafting on their behalf legal documents for their signatures. Respondent's misconduct warrants disbarment from the practice of law.
I. PROCEDURAL HISTORY On April 2, 2020, Jacob M. Vos, Office of Attorney Regulation Counsel ("the People"), filed a complaint against Respondent with Presiding Disciplinary Judge William R. Lucero ("the PDJ"), alleging violations of Wis. SCR 20:3.4(c) (Claim I – Violation of a Court Order), Fla. RPC 4- 3.4(c) (Claim II – Violation of a Court Order), Conn. RPC 3.4(3) (Claim III – Violation of a Court Order), Wis. SCR 20:5.5(a)(1) (Claim IV – Unauthorized Practice of Law), Conn. RPC 5.5(a) (Claim V – Unauthorized Practice of Law), and Fla. RPC 4- 5.5(a) (Claim VI – Unauthorized Practice of Law). The People brought these claims through the choice of law provisions contained in Colo. RPC 8.5(a) (subjecting Colorado-licensed lawyers to the disciplinary authority of this state) and Colo. RPC 8.5(b) (applying the rules of professional conduct of the jurisdiction in which the misconduct occurs).
After securing two extensions of time to answer the complaint, Respondent moved to dismiss on May 19, 2020, setting forth jurisdictional challenges to the proceedings and alleging that the People had failed to state a claim. In an order dated July 2, 2020, the PDJ rejected Respondent's jurisdictional challenges, but he dismissed without prejudice four of the People's claims as insufficiently pleaded. The PDJ directed Respondent to answer Claims I and IV, the complaint's remaining claims. Before Respondent answered, she filed a motion for summary judgment on July 17, 2020, which in part controverted factual allegations underlying the People's two surviving claims.1 Respondent then submitted her answer on July 23, 2020.
Despite the PDJ's repeated requests that Respondent participate in setting the hearing, she did not; as a result, the PDJ issued a scheduling order on August 6, 2020, without her participation.2 The PDJ set the hearing for November 12 and 13, 2020, with initial disclosures due on August 20, 2020, and a discovery cutoff of October 15, 2020.3 Because the parties had not yet exchanged initial disclosures or conducted any formal discovery, the People moved under C.R.C.P. 56(f) to extend their deadline to respond to the motion for summary judgment. Respondent opposed an extension, arguing that the proposed discovery would not produce facts precluding entry of summary judgment in her favor, and that the People could not inquire into facts related to the claims the PDJ had dismissed without prejudice. The PDJ disagreed. He granted the People's motion and gave them until September 14, 2020, to respond to the summary judgment motion.4 On August 20, 2020, Respondent moved to recuse the PDJ, arguing that the rulings in her current and prior disciplinary proceedings demonstrated the PDJ's bias against her. The PDJ denied the motion.5 Around the end of August, the parties exchanged initial disclosures, and the People served on Respondent their first and second sets of discovery requests on August 26 and 31, 2020.
Respondent moved for a protective order on September 1, 2020, urging the PDJ to rule that she need not answer any of the People's discovery.6 Invoking the Fifth Amendment privilege against self-incrimination, she argued that she need not respond because the unauthorized practice of law is a crime in Wisconsin and in her home state of Texas. She also claimed that while investigating the case, the People collected and published her private emails—which she alleged were illegally obtained—and thus she should not have to answer discovery about any related matter.
While Respondent's motion for a protective order was pending,7 the People sought a second extension to respond to her summary judgment motion, relying largely on the same arguments set forth in their first request. Over Respondent's objection, the PDJ granted the request on September 15, 2020. In the same order, the PDJ denied Respondent's motion for a protective order.
At the PDJ's direction, the People proposed a discovery schedule for the rest of the case: Respondent was to respond to the People's first set of discovery requests by September 30, 2020; by the parties’ agreement, she was to sit for her deposition on October 1, 2020; and she was to respond to the People's second set of discovery requests by October 5, 2020. The PDJ adopted the discovery schedule and ordered the People to respond to Respondent's summary judgment motion by October 22, 2020.8 On September 21, 2020, Respondent again moved to dismiss the case because she was unable to subpoena the complaining witness, lawyer Jacob Zimmerman, who is a Minnesota resident. She also requested that the PDJ find Zimmerman in contempt for refusing to make himself and his client Leonard Pozner available for deposition. The PDJ denied Respondent's requests on September 30, 2020, and reminded Respondent that Zimmerman is neither a party to the case nor subject to the PDJ's subpoena power through the mere act of grieving Respondent.
The same day, Respondent filed a "Notice of Intent Not to Respond to Discovery, Due to Violations of Due Process"9 and "Respondent's Waiver of Right to Hearing." In her notice, Respondent stated that she would not answer written discovery or sit for her deposition "due to the violation of her reciprocal discovery rights, as well as the violations of federal laws the [Court] was informed of earlier ...."10 Respondent again cited her inability to obtain a Colorado subpoena for Zimmerman's deposition and complained about the People's efforts to conduct discovery into her emails. She also renewed her Fifth Amendment self-incrimination objection. On these bases, she affirmed that she would "not comply with efforts to do discovery on [her]."11 In waiving her right to a hearing in this matter, Respondent asked the PDJ to take up and grant her motion for summary judgment.
On October 6, 2020, the People moved for default against Respondent under C.R.C.P. 37(d) as a sanction for her willful refusal to participate in the discovery process and for her failure to sit for her deposition. The People also requested and obtained a third extension of their deadline to respond to Respondent's summary judgment motion. On October 27, 2020—having received no response from Respondent to the default motion—the PDJ granted the People's motion and entered default against Respondent on Claims I and IV of the complaint. The PDJ also deemed moot Respondent's motion for summary judgment and converted the two-day hearing to a one-day hearing on the sanctions before the Hearing Board.
Respondent filed a motion to vacate default as well as a renewed motion for protective order on October 27, 2020.12 The PDJ accepted forthwith briefing on the two motions. In her renewed motion for protective order, Respondent provided new supporting affidavits but set forth arguments identical to those that she made in her initial motion. The PDJ denied the motion on November 9, 2020. The PDJ likewise denied Respondent's motion to vacate default, noting that she had not put forth any legitimate reason for failing to answer discovery and finding no good cause to vacate the order entering default.13 On November 12, 2020, a Hearing Board comprising the PDJ, lawyer Ralph G. Torres, and citizen member Cindy Enos-Martinez held a remote hearing on the sanctions under C.R.C.P. 251.18 via the Zoom videoconferencing platform. Vos represented the People; Respondent did not appear.14 During the hearing, the Hearing Board considered the People's exhibits 1-18 and the testimony of Jacob Zimmerman.15 Shortly before the hearing began, Respondent filed several motions, which the PDJ addressed as preliminary matters before beginning the hearing: the PDJ GRANTED "Respondent's Demand for Recording Via Zoom" and DENIED "Respondent's Motion to Exclude Zimmerman and Bankston, and Take Judicial Notice of Affidavits."
II. FACTS AND RULE VIOLATIONS Facts and Rule Violations Established on Default
Respondent was admitted to the practice of law in Colorado on May 20, 1987, under attorney registration number 16561. She is subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in this disciplinary proceeding.16 Her law license was most recently suspended for one year and one day, effective August 31, 2010. She has not been reinstated from that suspension. Respondent lived in Texas when the events described below transpired. She is not licensed to practice law in Texas or Wisconsin.
From November 27, 2018, until August 14, 2019, Dr. James Fetzer and Mike Palecek were pro se codefendants in a defamation action filed in Wisconsin's Dane County Circuit Court. Leonard Pozner, through counsel Jacob Zimmerman, brought the lawsuit, which was premised on a book the defendants wrote and published that argued the 2012 Sandy Hook school shooting was a fabrication. Pozner's son, Noah Pozner, was a victim of the Sandy Hook shooting.
Fetzer's answer in the case stated that "[t]his answer has been prepared under the guidance and with the assistance of a lawyer ...."17 Fetzer's answer did not state the lawyer's name or bar number.
Pozner eventually moved for summary judgment against Fetzer and Palecek. Fetzer and Zimmerman corresponded via email about an extension of time to respond to the motion. After a few exchanges, Respondent entered the conversation by replying to an email on which Fetzer appeared to have blind copied her. Her reply, which copied Zimmerman and Palecek, stated, "Why are you providing these to him? You haven't filed those motions with the court, right?"18 Palecek submitted a motion for an extension of time to respond and a cross-motion for summary judgment.19 At the hearing on summary judgment, held on June 17, 2019, the Wisconsin court engaged in the following dialogue with the parties:
Court: ... It's called a Verified Motion for Extension of Time to File Response to Plaintiff's Motion for Summary Judgment, Out of Time. Who wrote this brief, Mr. Palecek?
Palecek: An advisor to me, a retired attorney.
Court: Okay. So Supreme Court Rule 20:1.2, the Wisconsin Supreme Court has rules, requires that attorneys who assist people in drafting briefs are legally required to state in the brief, and I quote, "This document was prepared with the assistance of a lawyer." This is not stated in your brief.
Palecek: Okay.
Court: Is this lawyer licensed to practice law in Wisconsin?
Fetzer: No.
Palecek: No.20 The court struck the pleading, noted that practicing law in Wisconsin without a license is a crime, and later granted Pozner's motion for summary judgment against Fetzer and Palecek.21 Fetzer and Palecek sought interlocutory review of the summary judgment order. Their petition for interlocutory appellate review named Respondent as the unlicensed lawyer who assisted them. The petition provided that it "was prepared with the assistance of a lawyer whose license is not active, Alison Maynard, Colorado Bar Registration No. 16561."22 The petition again noted that "the defendants have benefitted from the assistance of a lawyer whose license is not active."23 Fetzer and Palecek later submitted an amended application for interlocutory appellate review, which likewise provided that it "was prepared with the assistance of a lawyer whose license is not active, Alison Maynard, Colorado Bar Registration No. 16561."24 In the order denying interlocutory review, the Wisconsin Court of Appeals stated that "it does not appear that [Respondent] is licensed to practice law in Wisconsin or in any other state at this time. Therefore, [Respondent] may not give assistance in the preparation of pleadings, briefs, or other documents to be filed in Wisconsin courts until and unless she is licensed in this state."25 After the Wisconsin Court of Appeals denied interlocutory review, the matter was set for a damages hearing. A Wisconsin-licensed lawyer represented Fetzer and Palecek at the hearing. During the proceedings, Fetzer was twice found in contempt for disclosing to Respondent, among others, Pozner's confidential deposition video and transcript.
Through the conduct described above, as established on default, Respondent violated Wis. SCR 20:3.4(c), which states that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists. Though Respondent did not hold an active license to practice law in Wisconsin, Colorado, or in any other state, she engaged in the practice of law in contravention of her Colorado order of suspension. She did so by preparing a petition for interlocutory appellate review and an amended application for interlocutory appeal that Fetzer and Palecek submitted to the Wisconsin Court of Appeals. By engaging in the unauthorized practice of law, Respondent also violated Wis. SCR 20:5.5(a)(1), which provides that a lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.
Facts Established at Sanctions Hearing
Factual findings are drawn from the testimony at the disciplinary hearing where not otherwise indicated. The Hearing Board considers the testimony and exhibits for the limited purpose of determining the appropriate sanction to be imposed in this matter.
At the hearing, Zimmerman described his role as lead plaintiff's counsel in the defamation lawsuit that Leonard Pozner brought against Dr. James Fetzer and two other defendants26 involved in writing and publishing the book Nobody Died at Sandy Hook . The book, Zimmerman said, accused Pozner of fabricating his son's death certificate.
Zimmerman testified that during the time Pozner's motion for summary judgment was pending, Zimmerman regularly communicated with Fetzer—who was purportedly acting pro se—particularly about deadlines that Fetzer missed.27 Zimmerman said that in one such communication, he emailed Fetzer courtesy copies of documents he intended to file with the circuit court.28 He received a responsive email from an address unknown to him, dinophile@gmail.com.29 He deduced that the new correspondent had been blind copied on Fetzer's email, and that the message he received was a reply-to-all missive. Zimmerman researched the email address and learned that it belongs to Respondent, who he discovered was a lawyer with a suspended law license.30 Zimmerman then alerted disciplinary authorities in Colorado and Texas of Respondent's involvement in the case. Zimmerman testified that he did not raise the issue in the Wisconsin litigation at that time, other than to ask Fetzer to acknowledge any representation so that he could avoid communicating with a represented party.
A few days later at the hearing on summary judgment, the judge sua sponte asked Palecek whether he had been assisted with a last-minute filing. Palecek acknowledged receiving help from a lawyer; the court informed Palecek that practicing law in Wisconsin without a Wisconsin license is illegal, and that the court could not accept a brief that failed to acknowledge the assistance of a lawyer.31 The court also remarked on deficiencies in Palecek's pleadings and intimated that a lawyer licensed in Wisconsin would have likely provided competent guidance.32 Zimmerman testified that after Pozner prevailed on summary judgment as to the question of liability, the defendants requested an interlocutory appeal of the court's ruling. In requesting interlocutory appeal, Fetzer submitted filings identifying Respondent as an assisting lawyer.33 In its order denying interlocutory review, the Wisconsin Court of Appeals specifically mentioned that under Wisconsin law "[Respondent] may not give assistance in the preparation of pleadings, briefs, or other documents to be filed in Wisconsin courts until and unless she is licensed in this state."34 Respondent's involvement in the Wisconsin litigation extended beyond assisting with filings, Zimmerman noted. He recounted that Pozner had sat for a video deposition for which the circuit court issued a confidentiality order. The confidentiality order, he explained, restricted the distribution of the video and the transcript from the deposition, as those materials included Pozner's sensitive medical and financial information. According to Zimmerman, Fetzer testified that he had violated the court's confidentiality order by giving Respondent a copy of the video and transcript so as to solicit her advice on cross-examining Pozner.35 Zimmerman claimed that after Respondent received the video and transcript—which were marked confidential—she circulated them to outside individuals who were not authorized to receive them.36 Zimmerman posited that Respondent published the documents to her blog in retribution for Pozner's public statements about her.37 The Wisconsin circuit court twice addressed the distribution and publication of the deposition video and transcript. First, on September 13, 2019, the court held Fetzer in contempt for sharing the confidential video with Respondent and, through her, with other unauthorized individuals.38 In a second hearing, held on March 17, 2020, the court again found Fetzer in contempt and awarded sanctions to Pozner after Fetzer gave Respondent a copy of the deposition transcript,39 which she had published on her blog page.40 The court expressed doubts that the contempt could be purged, stating, "Dr. Fetzer will not ever be able to retrieve every copy [of the video and transcript] or have every page and copy destroyed. ... [R]elentlessly pursuing the retrieval or destruction of this information, in my opinion, may very well be a hopeless task."41 Zimmerman said that the court discussed sanctioning Respondent for her conduct but concluded it had no jurisdiction to do so because she had not entered an appearance in the case, she did not hold a license to practice law in Wisconsin, and she was not a Wisconsin resident.42 Zimmerman testified that Respondent's disclosures of the confidential deposition materials harmed Pozner—especially her circulation of the video showing hours of footage of Pozner's face. Zimmerman explained that Pozner is an ongoing victim of death threats, some of which have been serious enough to result in prosecution, conviction, and sentencing. These threats, Zimmerman claimed, have forced Pozner to change residences seven times out of fear for his and his family's safety, and have taught him to take particular care to keep his address confidential and to avoid any online or public use of his likeness. Respondent's distribution of the video images of Pozner thus exacerbated Pozner's concerns for his security, Zimmerman said.
Respondent has provided or offered to provide legal assistance to other individuals involved in litigation related to the Sandy Hook school shooting. Respondent assisted a man named Wolfgang Halbig in various cases, emailing him about the need for an expert witness to discuss Sandy Hook memorial websites43 and drafting a qui tam complaint for his signature.44 Indeed, Zimmerman testified that Respondent wrote on her blog of her efforts to assist Halbig in a Florida lawsuit that Pozner brought against him for publishing Pozner's personal information online.45 Respondent has publicly touted her involvement in the Halbig and Fetzer cases on multiple occasions. In an online article titled The Long Arm of the Lawless: The Official Oppression of Wolfgang Halbig Continues , published on January 25, 2019, Respondent wrote: "Because I've been helping Wolfgang Halbig defend against the frivolous suits brought by seven Sandy Hook ‘parents’ in Connecticut Superior Court, I'm in a good position to tell the world what's going on in those, how not only the judge, but the clerks, are sabotaging his defense."46 In that article, Respondent provided her readers with a jurisdictional analysis of the litigation, plus her assessment of the merits of the various complaints against Halbig.47 And in a speaker biography for the "Question Everything 2020 Convention," Respondent highlighted that "[i]n recent years she has, without compensation, assisted James Fetzer and Wolfgang Halbig in defending against Sandy Hook lawsuits ...."48 Through media clips, the Hearing Board heard additional details in Respondent's own voice of her work on Sandy Hook cases. During one web video interview, Respondent told the host:
Wolfgang Halbig, who's a Sandy Hook investigator, whom I know you know, and James Fetzer—they were sued in bogus lawsuits, and I, I have helped them. I don't have an active license. So, I have told them that. I said, "My license is suspended. I can't represent you in court. But I can help you."49 In the same interview, Respondent added:
There's no evidence, no good evidence anybody [at Sandy Hook] died, and so that's why Jim [Fetzer] is being retaliated against. And I'm being retaliated against because I actually did come up with what is, really, an open-and-shut defense for him. You know, it remains to be seen ... He's been really screwed by the courts there.50 In a separate audio-only interview from January 22, 2020, Respondent admitted that she prepared legal documents for Halbig: "Yes, I've helped him. ... He knows that I can't represent him, I don't represent him, I can't go to court on his behalf. But yes, I have drafted things for him, which he has signed and filed himself."51 Later, on June 12, 2020—while this case was pending—Respondent appeared for an online interview hosted by Fetzer. Fetzer introduced Respondent as "someone who has been extending herself to aid and assist others who have found themselves on the wrong end of a legal case, typically contrived cases intended to punish those of us who have been speaking the truth."52 The media clips also display Respondent's public offers of legal "consultations" and "help," albeit with certain caveats. During an audio-only interview conducted on January 19, 2018,53 Respondent was asked whether she offers "consultations" to listeners who want help navigating the legal system.54 Respondent answered that "she would like to be consulted" but that she could not charge for her work.55 And during the interview of January 22, 2020, Respondent told the host:
I have people come to me all the time who need help, and I don't deny them help, but I fully explain what my status is. I say, "I cannot represent you. I can't sign anything. I can't go to court on your behalf. But I will help you to the best of my ability."56 Although she publicly eschews monetary compensation for her assistance, Respondent's media appearances and statements illustrate the reputational currency she has earned among her listeners for her involvement in Sandy Hook lawsuits. Respondent sees her work as benefiting the public interest; of a more personal nature, she has described deriving a sense of purpose from her "consultations":
Yes, I would like to be consulted .... I don't know probate that well ... I have done a little. I want to really attack this problem and make a change. I really want to do this. I'm raring to go now after spending some years in a funk and trying to do something else in the meantime.57 Finally, the Hearing Board heard testimony from Zimmerman that Respondent had recently filed federal actions in the Western District of Texas naming him, counsel for the People, and the PDJ as defendants, and seeking in part to enjoin this disciplinary hearing. Zimmerman also reported that Respondent filed two grievances against him in Minnesota. Both grievances were dismissed in the initial stage by the Minnesota Office of Lawyers Professional Responsibility, he said.
III. SANCTIONS The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")58 and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.59 When imposing a sanction after a finding of lawyer misconduct, a hearing board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0 – Duty, Mental State, and Injury
Duty : Respondent violated her duties to the legal system and to the legal profession. A lawyer must respect the rule of law, and the failure to obey any obligation under the rules of a tribunal constitutes an abuse of the legal process.60 Respondent has a duty to comply with the disciplinary orders suspending her license to practice law; she violated that duty by assisting Fetzer and Palecek to draft court filings.
Respondent also has the duty to conduct herself in accordance with the standards of conduct adopted by the legal profession, including complying with the rules governing the practice of law. She violated this professional obligation by engaging in the unauthorized practice of law when she prepared pleadings for Fetzer and Palecek to submit to the Wisconsin Court of Appeals.
Mental State : By entering default on Claim I, the PDJ deemed established the allegations in the complaint underlying that claim, including the allegation that Respondent knowingly violated her disciplinary suspension order when she assisted Fetzer and Palecek by preparing court filings on their behalf.61 The Hearing Board also considered evidence that Respondent knowingly engaged in the unauthorized practice of law by providing legal drafting services during her suspension. Emails between Fetzer and Respondent confirm that she began actively reviewing his case as early as March 2019. In July 2019, Respondent was named as an assisting lawyer on the two applications for interlocutory appellate review that Fetzer and Palecek filed. In the time after, Respondent made public statements acknowledging her role in assisting Fetzer with his defense. The Hearing Board finds by clear and convincing evidence that Respondent knowingly engaged in the unauthorized practice of law.62 Injury : By disregarding her suspension and practicing law without a license, Respondent harmed the parties to the Wisconsin litigation, the legal system, and the legal profession.
Respondent's misconduct in the Wisconsin case harmed both parties to the litigation. Her involvement prolonged the matter—albeit to a small degree—because the applications for interlocutory review necessitated a response from Pozner. In general, Zimmerman reported, both he and his client were frustrated by Respondent's disregard for court orders and instructions. More significant is the actual harm that Respondent caused the legal system, which we consider to be serious. Respondent's involvement in the litigation was a troublesome issue for the Wisconsin tribunals. The Wisconsin Court of Appeals made plain its antipathy to the unauthorized practice of law, drawing specific attention to Respondent by name. By acting as a shadow adviser and ghost writer, Respondent operated outside the bounds of traditional representation; she was thus not specifically subject to court oversight. She acted outside of the legal system's structures of accountability, which had cascading harmful effects. In particular, by sharing with outside parties Pozner's deposition, Respondent undermined the authority of the circuit court to enforce its protective order. Indeed, after Respondent distributed the confidential materials, the circuit court resigned itself to the ongoing violation of its protective order. Her actions on this front also harmed the very party whom she purported to help—Fetzer—who was twice found in contempt and sanctioned for the release of those materials.
Finally, Respondent compromised the integrity of the legal profession by disobeying a court order suspending her from practicing law. By flouting her order of suspension, she undercut the authority of Wisconsin courts and the Colorado disciplinary system, causing serious injury to the legal system and to the legal profession.
ABA Standards 4.0-8.0 – Presumptive Sanction Under the ABA Standards , the presumptive sanction for Respondent's misconduct is disbarment. ABA Standard 8.1(a) provides that disbarment is generally warranted when a lawyer "intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury" to the legal system or the profession. The Hearing Board finds that these elements are met here, and we therefore look to ABA Standard 8.1(a) as setting the presumptive sanction here.63 The People contend, and we agree, that the presumptive sanction in this case is also established by ABA Standard 7.1, which calls for disbarment when a lawyer knowingly engages in conduct in violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer, causing serious or potentially serious injury to a client, the public, the legal system, or the profession.
ABA Standard 9.0 – Aggravating and Mitigating Factors
Aggravating circumstances include any considerations that justify an increase in the degree of the sanction to be imposed, while mitigating factors warrant a reduction in the severity of the sanction.64 As explained below, the Hearing Board applies five factors in aggravation, four of which we assign great weight, and one factor in mitigation.
Prior Disciplinary Offenses – 9.22(a) & Remoteness of Prior Offenses – 9.32(m) : Respondent has been disciplined thrice. In case number 07PDJ067, Respondent was found to have attempted to deceive the Colorado Supreme Court by intentionally backdating a late-filed brief to make it appear as though it were timely filed.65 A hearing board suspended her for one year and one day, with all but sixty days stayed.66 Later, in case number 08PDJ059, a hearing board concluded that Respondent had challenged a final judgment through a series of collateral actions—including frivolous lawsuits and motions—in state, federal, and water courts, and ignored a judge's order to stop her collateral attacks or face sanctions.67 The hearing board in that matter suspended her for one year.68 Finally, in case number 09PDJ028, Respondent was suspended for one year and one day.69 The hearing board in that case found that in an effort to obtain attorney's fees after withdrawing from a case, Respondent sought to leverage the threat of civil litigation against witnesses subpoenaed to an attorney's fees hearing; attempted to halt a global settlement between her former clients and defendants regarding attorney's fees; and tried to secretly negotiate with the defendants for additional attorney's fees in order to avoid sharing those fees with her former clients.70 Respondent's previous suspensions are somewhat remote, and we thus apply that factor in mitigation under ABA Standard 9.32(m). Nevertheless, her offenses are illustrative of a continuing pattern of disregard of court orders and rules that extends to the present matter. We therefore weigh the prior discipline aggravator heavily under ABA Standard 9.22(a).
Pattern of Misconduct – 9.22(c) : The Hearing Board considered evidence that Respondent provided legal services on multiple occasions during her suspension, often with Sandy Hook litigation as a nexus. Within the Wisconsin litigation alone, she worked on several pleadings. Her own emails also lead us to conclude that she drafted pleadings in at least three additional cases.71 In light of the abundant evidence of Respondent's repeated unauthorized practice of law, even beyond the facts and rule violations established on default,72 we weigh this aggravator heavily.
Bad Faith Obstruction of the Disciplinary Proceeding – 9.22(e) : From the outset of this case, and up through her decision not to appear at the hearing on the sanctions, Respondent bogged down the proceedings by disregarding the PDJ's directives. Before answering the People's complaint, she filed a motion for summary judgment. She set forth unsupported arguments and allegations to evade providing discovery; when the PDJ ruled against her positions, she repackaged identical arguments and claims in new motions. In granting the People's request for default, the PDJ found Respondent's refusal to engage in discovery to be in bad faith. The Hearing Board gives this factor significant aggravating weight.
Refusal to Acknowledge Wrongful Nature of Conduct – 9.22(g) : Respondent maintains that she could not have engaged in the unauthorized practice of law because she did not accept compensation from Fetzer or from Palecek (or from any of the parties she has assisted), and because she never represented them in court. She has refused to acknowledge plain statutory language in Wisconsin that forbids her from drafting legal documents for others, instead insisting that her actions have always complied with Wisconsin rules and have served the public interest. She contends that her conduct should not be disciplined but celebrated. Accordingly, this factor warrants considerable aggravating weight.
Substantial Experience in the Practice of Law – 9.22(i) : Respondent practiced law from 1987 until 2008. This, too, we consider an aggravating factor.
Analysis Under ABA Standards and Case Law The Hearing Board is cognizant of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,73 mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."74 Though prior cases can inform through analogy, the Hearing Board is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
Here, the People request disbarment. Respondent has not participated and thus has not advocated any alternative sanction.
In support of their contention that "Colorado routinely disbars attorneys for practicing in violation of disciplinary suspension orders,"75 the People point to People v. Stauffer .76 There, a lawyer was immediately suspended based on criminal charges pending against him.77 He continued to practice law during the period in which he was immediately suspended, and the Colorado Supreme Court held that disbarment was the appropriate sanction.78 The People also direct us to People v. Zimmerman , where the Colorado Supreme Court applied ABA Standard 8.1(a) to impose disbarment.79 In Zimmerman , the lawyer accepted advance fees in client matters after an order of disciplinary suspension entered against him, causing actual harm to the clients because they received no benefit from the fees they paid to the lawyer.80 The Colorado Supreme Court rejected the lawyer's argument that a three-year suspension would suffice, noting that prior cases imposing sanctions less than disbarment involved violations of administrative—not disciplinary—suspension orders.81 We also find persuasive People v. Redman , where the Colorado Supreme Court accepted a lawyer's stipulation to disbarment for representing several clients in contravention of a disciplinary suspension order.82 The Redman court cited ABA Standard 8.1(a) and observed that disbarment has generally been imposed "when a lawyer practices law while suspended or otherwise violates an order of suspension and causes harm" to a client, the public, the legal system, or the profession.83 Cases where lawyers have been suspended rather than disbarred for practicing law in violation of disciplinary orders have mitigating circumstances not present here. In People v. Dieters , the Colorado Supreme Court accepted a stipulation suspending a lawyer for ninety days for negligently practicing law during a suspension, where the suspended lawyer mistakenly thought he had been reinstated at the time of the representation.84 In People v. Ross , the Colorado Supreme Court concluded that a three-year suspension, rather than disbarment, was the minimum appropriate sanction for a lawyer who practiced while suspended but whose conduct did not result in harm and whose disciplinary history was limited to the suspension in place and a prior admonition.85 With these authorities guiding us, we turn to Respondent's misconduct. She knowingly disregarded her order of suspension by drafting pleadings for others’ signatures that were then filed in court. She has publicly offered her legal services in the form of "consultations" to parties involved in various types of litigation. She has done so for reputational value and publicity in multiple fora. Respondent does not believe she has acted wrongfully; to the contrary, she has evinced an intention to continue her impermissible legal work, which she views as a public service.
Disbarment is the only appropriate sanction in this instance, given the presumptive sanction of disbarment, the relevant case law, and the number of aggravating factors. Indeed, five factors in aggravation apply here—four that carry significant weight—with the remoteness of Respondent's prior disciplinary offenses as the sole mitigating factor. Though Respondent's history leaves some doubt that any sanction ordered here will have a deterrent effect, her misconduct must be answered with the remaining tool available to our regulatory system. Accordingly, we find that Respondent must be disbarred.
IV. CONCLUSION Respondent disregarded an order suspending her license to practice law when she assisted unrepresented parties in litigation by drafting pleadings for their signatures. She thereby injured the parties involved in the case. Further, she undermined the legal system by violating the duty she owes as a professional to obey court orders and the rules governing the practice of law in each jurisdiction. Her actions flouted the authority of the Colorado Supreme Court and is cause for disbarment.
V. ORDER The Hearing Board therefore ORDERS :
1. ALISON MAYNARD , attorney registration number 16561, is DISBARRED . The DISBARMENT SHALL take effect only upon issuance of an "Order and Notice of Disbarment."86 2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia , to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motions on or before Thursday, January 21, 2021 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or before Thursday, January 28, 2021 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL file a statement of costs on or before Thursday, January 21, 2021 . Any response thereto MUST be filed within seven days.
/s/ Ralph G. Torres RALPH G. TORRES
HEARING BOARD MEMBER
/s/ Cindy Enos-Martinez CINDY ENOS-MARTINEZ
HEARING BOARD MEMBER
1 Respondent filed a revised summary judgment motion on July 20, 2020.
2 Respondent insisted that her motion for summary judgment obviated the need to set prehearing deadlines or the hearing. See "Scheduling Order" (Aug. 6, 2020).
3 Also on August 6, 2020, Respondent filed a motion to suspend deadlines and stay discovery pending a decision on her motion for summary judgment. The PDJ later deemed Respondent's motion moot, having granted the People's request for additional time to conduct discovery.
4 "Order Granting Motion to Continue Summary Judgment Deadlines Under C.R.C.P. 56(f)" at 2 (Aug. 17, 2020). The People noted that a portion of the motion for summary judgment posed a pure question of law and offered to brief that argument for the PDJ. In the interests of judicial economy, the PDJ declined to consider the summary judgment motion in piecemeal fashion, opting instead to decide the entire motion once it had been fully briefed.
5 See "Order Denying Respondent's Motion to Recuse" (Sept. 10, 2020).
6 See "Motion for Protective Order, Seal, and Sanctions" (Sept. 1, 2020).
7 Respondent's recusal motion stayed any judicial action in the matter until it was decided. Respondent's motion for protective order stayed further discovery in the case until that motion was decided. Taken together, the motions to recuse and for a protective order effectively halted further action in the case until the PDJ denied the former on September 10, 2020.
8 "Order Accepting the People's Proposed Discovery Schedule and Setting Deadline to Respond to Motion for Summary Judgment" at 2 (Sept. 28, 2020).
9 Ex. 17 (Sept. 30, 2020).
10 Ex. 17 at 1.
11 Ex. 17 at 2.
12 On October 30, 2020, Respondent filed a second motion to vacate default, replacing her initial motion.
13 "Order Denying Motion to Vacate Default" (Nov. 10, 2020).
14 On November 2, 2020, the PDJ's administrator emailed the parties an additional notice of the remote hearing and requested they schedule a practice session. The next day, Respondent replied that she would not participate.
15 The PDJ also rejected the People's proposed non-stipulated exhibit 19 and Respondent's proposed non-stipulated exhibit A, which the parties submitted after the hearing, as filed out of time without good cause. See "Order Rejecting Submission of People's Proposed Non-Stipulated Exhibit 19 and Rejecting Respondent's Proposed Non-Stipulated Exhibit A" (Nov. 17, 2020).
16 See C.R.C.P. 251.1(b) ; In re C de Baca , 11 P.3d 426, 430 (Colo. 2000) (finding that a suspended lawyer is subject to discipline for violating the rules of professional conduct while the lawyer is suspended); People v. Dolan , 873 P.2d 766, 766 n.1 (Colo. 1994) (same).
17 Compl. ¶ 8; see also Ex. 1 at 736.
18 Compl. ¶ 14; see also Ex. 10 at 518.
19 Compl. ¶¶ 10-11.
20 Compl. ¶ 12; see also Ex.13 at 387.
21 Compl. ¶ 13; see also Ex. 13 at 388.
22 Compl. ¶ 15; see also Ex. 2 at 752.
23 Compl. ¶ 16.
24 Compl. ¶ 17; see also Ex. 3 at 775.
25 Compl. ¶ 18; see also Ex. 4 at 780.
26 The other two defendants were Mike Palecek and Wrongs Without Wremedies, LLC. See Ex. 1 at 735.
27 See, e.g. , Ex. 10 at 519-21.
28 Ex. 10 at 518.
29 Ex. 10 at 518.
30 This is the same email address that Respondent has used as her own throughout this case. Emails between Fetzer and Respondent show that her involvement in the Wisconsin litigation began as early as March 2019. In that period, she was copied on an email sent to Fetzer by an unidentified author. The unknown party informs Fetzer that he "passed along [Fetzer's] request to an attorney whose opinion [he values] highly, Alison Maynard." Ex. 10 at 14. From there, Respondent reviewed a slew of filings from the case and scheduled a discussion with Fetzer. Ex. 10 at 15-17.
31 Ex. 13 at 387-88.
32 Ex. 13 at 389.
33 Ex. 2 at 752; Ex. 3 at 775.
34 Ex. 4 at 780.
35 Transcripts from Fetzer's contempt hearings before the Wisconsin circuit court reflect that Fetzer provided the confidential deposition materials to Respondent in relation to her work on his case. First, in September 2019, Fetzer represented to the court that he thought it was appropriate to give a copy of the deposition video to Respondent, "who had been assisting [him] with briefs." Ex. 14 at 724. Then, in March 2020, Fetzer testified that he believed Respondent was entitled to a copy of the deposition transcript "because I was seeking her assistance in preparation for the appeal." Ex. 12 at 59. The court found that Fetzer shared the transcript for purposes of seeking legal advice from a person not authorized to practice law in Wisconsin. Ex. 12 at 60.
36 The transcript from Fetzer's second contempt hearing before the Wisconsin circuit court reflects that the deposition video and transcript were subject to a protective order issued by that court. See Ex. 12 at 32. The transcript was marked confidential. Ex. 12 at 58.
37 Zimmerman also told the Wisconsin circuit court that Respondent posted the video online in retaliation for the grievance he filed with the People. See Ex. 12 at 37.
38 Ex. 14.
39 See Ex. 12 at 32-33.
40 See Ex. 12 at 55.
41 Ex. 12 at 38-39.
42 See Ex. 12 at 39. Zimmerman represented to the Hearing Board that he did not himself contact Respondent about the unauthorized disclosures because he received assurances from Fetzer's Wisconsin lawyer that the distributions of the materials would cease.
43 Ex. 11 at 175.
44 Ex. 11 at 176.
45 Respondent also appears to have engaged in other legal work at that time, including drafting a reply brief for a person named Tom Anthony, see Ex. 11 at 173, and writing an appellate reply brief for someone she describes as "[her] other ‘client’ in Colorado ...." Ex. 11 at 176.
46 Ex. 15 at 128. The editor's note prefacing the article introduced Respondent as "Colorado-based attorney Alison Maynard."
47 Ex. 15 at 129.
48 Ex. 5 at 787. Respondent posted the document to her blog The Real Colorado: Me at the Mike .
49 Ex. 9 at 04:40. This opinion transcribes as accurately as possible each of the cited recordings.
50 Ex. 9 at 08:25.
51 Ex. 7 at 17:50. Respondent is identified at 02:29.
52 Ex. 8 at 02:00. Respondent echoed this conviction in her retort against these proceedings: "In fighting for Fetzer's and others’ First Amendment rights, as well as helping Jim Fetzer expose frauds which have been committed on the American taxpayer, I have worked in the public interest. My conduct not only constitutes no offense, it ought to be celebrated." Ex. 16 ¶ 18 ("Movant's Statement of Material Undisputed Facts" (Aug. 27, 2020)).
53 Ex. 6. Respondent is identified at 0:01:02.
54 Ex. 6 at 01:35:50.
55 Ex. 6 at 01:36:25.
56 Ex. 7 at 15:10.
57 Ex. 6 at 01:36:25.
58 Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2d ed. 2019).
59 See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).
60 See ABA Standard 6.2.
61 The People pleaded that Respondent knowingly assisted Fetzer and Palecek in the Wisconsin litigation by drafting legal documents on their behalf for their signatures, thereby violating her Colorado disciplinary suspension by practicing law in violation of the suspension order (Claim I – Wis. SCR 20:3.4(c)).
62 "Knowing" is the conscious awareness of the nature or attendant circumstances of the conduct, without the conscious objective or purpose to accomplish a particular result. ABA Standards Preface at xxi; see also People v. Foreman , 966 P.2d 1062, 1065 (Colo. 1998) (noting that ignorance of the requirements of a Rule of Professional Conduct does not transform knowing conduct into negligent conduct) (quotation omitted).
63 The Hearing Board finds that ABA Standard 8.1(a), rather than ABA Standard 6.21, is a more fitting standard to apply when considering Respondent's violation of Wis. SCR 20:3.4(c). This is because ABA Standard 8.1(a) specifically addresses a lawyer's violation of a prior disciplinary order. Nevertheless, the same presumptive sanction of disbarment would result if the Hearing Board were to apply ABA Standard 6.21.
64 See ABA Standards 9.21 and 9.31.
65 See Ex. 18. The hearing board in that case found that Respondent violated Colo. RPC 1.3, Colo. RPC 3.3(a)(1), and Colo. RPC 8.4(c).
66 Ex. 18 at 309.
67 See Ex. 18. The hearing board in that case found that Respondent violated Colo. RPC 1.1, Colo. RPC 3.1, Colo. RPC 3.2, Colo. RPC 3.4(c), Colo. RPC 3.5(c), and Colo. RPC 8.4(d).
68 Ex. 18 at 311, 874.
69 Ex. 18 at 329.
70 See Ex. 18. The hearing board in that case found that Respondent violated Colo. RPC 8.4(c) and Colo. RPC 8.4(d).
71 See Ex. 11.
72 See ABA Annotated Standards for Imposing Lawyer Sanctions at 463 (noting that aggravation under ABA Standard 9.22(c) may include misconduct other than the charged violations).
73 See In re Attorney F. , 2012 CO 57, ¶ 20, 285 P.3d 322 ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).
74 In re Attorney F. at ¶ 20 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).
75 People's Hr'g Br. at 3.
76 858 P.2d 694 (Colo. 1993).
77 Id. at 694.
78 Id. at 699.
79 960 P.2d 85, 87-88 (Colo. 1998).
80 Id. at 86.
81 Id. at 88.
82 902 P.2d 839, 839-40 (Colo. 1995).
83 Id. at 840 (citing, inter alia , People v. Wilson , 832 P.2d 943, 945 (Colo. 1992) ("A lawyer's continued practice of law while under an order of suspension ... warrants disbarment.")).
84 883 P.2d 1050, 1052 (Colo. 1994).
85 873 P.2d 728, 730 (Colo. 1994).
86 In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.